Sylvia COLE, Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 92–184C.

United States Claims Court.

Sept. 24, 1992.

Steven J. Cologne, San Diego, Cal., for plaintiff.

Donna C. Maizel, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion for summary judgment. Plaintiff seeks compensation in the form of back disability retirement pay for decedent, Conner G. Cole, claiming that the United States Air Force Board for Correction of Military Records' decision not to change the personnel records of plaintiff's decedent to indicate that he was retired for medical disability in 1963 was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence. For the reasons set forth below, the court remands the case to the Air Force Board for Correction of Military Records for further consideration.

## FACTS

From approximately June 3, 1944, through July 4, 1947, decedent, Conner G. Cole, served with the United States Army. He then entered the Air Force on January 3, 1949, and attained the rank of major. While serving in the Air Force, a number of electrocardiographic tests were performed on Major Cole.[1] During a routine annual physical examination on January 27, 1956, Dr. Rudolph J. Marshall found Major Cole's EKG to be within normal limits, and characterized Major Cole as fit for general military service. On December 5, 1957, Dr. Anthony Deep noted an occasional third heart sound, yet found the EKG to be normal. At Major Cole's next annual physical on September 17, 1958, Dr. Charles W. Roth found the EKG to be normal. The following year on November 19, another EKG was performed by Dr. Charles Roth, and on January 12, 1960, Dr. Roth evaluated Major Cole's overall physical condition, finding him qualified for general military service.

At Major Cole's next annual physical on December 23, 1960, Dr. Jesse F. Richardson found him qualified for general mili-

tary service. Dr. Richardson, in the Report of Medical Examination, noted:

Electrocardiographic evidence of non-specific T-wave changes[;] no other clinical abnormality or significant medical history. Review of previous electrocardiograms in medical records reveals no change in tracings. No evidence of cardiac disease or defect at present or in the past.

Performing another EKG five days later, Dr. Howard R. Uncer determined that Major Cole's EKG was abnormal with non-specific T-waves that had no change in comparison to previous tracings.

During Major Cole's medical examination by Dr. Phillip Foley on November 13, 1962, Dr. A.R. Nelson performed an ECG on Major Cole. Dr. Nelson noted an abnormal ECG and non-specific T-changes, unchanged from tracings taken in 1957, and recommended that one EKG be performed while fasting and another one hour after eating. In spite of the impending EKGs, the physicians characterized Major Cole as qualified for general military service. A week later, Dr. Nelson performed the two follow-up ECG tests. The fasting ECG test was borderline, and the T-changes were less marked, presumably non-pathologic, metabolic factors. The nonfasting ECG record contained the notation: "Abnormal ECG showing non-specific T-inversion of lateral priordial leads and unchanged from previous tracings. Since changes are less severe on a fasting tracing, it is assumed that the changes are non-pathological."

Prior to his discharge from the Air Force, Major Cole underwent a final physical evaluation on May 2, 1963, to determine the necessity of a referral to a physical evaluation board. Dr. Raymond Petrauskas, the examining physician, noted an abnormal ECG, with no changes in tracings over the past seven years, and no history or clinical evidence of cardiac disease. As a result of this examination, physicians found Major Cole qualified for further commissioned service. Moreover, Cole, him-

---

1. The electrocardiographic tests appear interchangeably in Major Cole's medical records as ECGs and EKGs. The record is unclear as to whether the Air Force performed EKGs routine-ly on an annual basis to all service members, or whether the Air Force monitored Mr. Cole more closely because he was at risk of developing a heart problem.

self, on a medical history form, characterized his health as "excellent," and indicated that he had never suffered from shortness of breath, pain or pressure in his chest, palpitation or pounding heart, or high or low blood pressure. Serving on active duty in the armed forces for 17 years, 10 months and 25 days, Major Cole was 35 days away from receiving full retirement benefits when, after having twice passed him over for promotion to lieutenant colonel, the Air Force involuntarily discharged him on October 31, 1963.

On December 29, 1978, Major Cole submitted a claim to the Veterans Administration ("VA") seeking compensation for service connection of an existing disability. On June 5, 1979, as part of the Veterans Administration disability evaluation, Major Cole underwent a physical examination by his personal physician, Dr. Benjamin Lehr, under VA authorization. Dr. Lehr's report of examination included Major Cole's medical history: a heart attack in 1968, a second heart attack in June 1975, and a stroke in March 1978. After evaluating Dr. Lehr's medical report, the VA issued a rating decision on July 25, 1979, on Major Cole's original claim. Major Cole was found to have a disability rating of 60 percent due to arteriosclerotic heart disease and 60 percent due to cerebrovascular accident with right hemiparesthesia.[2] Although these conditions resulted in a combined disability rating of 80 percent, the VA found no service connection between the disabilities and Major Cole's military service. Upon receiving this decision, Major Cole reopened his claim seeking service connection for other ailments. The VA entered a second rating decision, finding no service connection for Major Cole's disabilities, on August 26, 1987, leaving the original rating decision unchanged.

On November 25, 1987, the Veterans Administration issued a second request for physical examination; however, this time the VA directed a special examination by a cardiologist. The official authorizing the examination directed the physician "to review service health records, particularly EKG findings for an opinion whether heart disease had its start in service." In a letter to the Veterans Administration rating board, Dr. K. MacGaffey, the examining physician, pointed out abnormalities in EKG tracings between 1956 and 1962, and opined that the electrocardiograms prior to Major Cole's discharge demonstrated the existence of ischemic heart disease while in military service.[3] The rating board did not adopt Dr. MacGaffey's analysis, however, concluding instead that the non-specific EKG abnormalities noted during active service were not diagnostic of heart disease, and that there was no other evidence indicating cardiac disease, hypertension, or arteriosclerosis during service. Thus, the VA rating board again affirmed a non-service connection for Major Cole's medical condition.

Major Cole died on August 10, 1988. The cause of death, as indicated on his death certificate, was cardiopulmonary failure of two minutes duration, as a consequence of metastatic carcinoma of eight weeks duration, as a consequence of likely carcinoma of the colon of six months duration.

Twenty days later, the Veterans Administration's Director of Compensation and Pension Services, Mr. J. Gary Hickman, wrote to the Veterans Administration Regional Office that had issued Major Cole's rating decisions, stating that the VA had erroneously denied Major Cole's claim. In evaluating Major Cole's file, the Chief Medical Director for the Veterans Administration found that Major Cole's first ECG in 1957 demonstrated the existence of ischemia, indicating a service connection for Major Cole's heart disease. Based on this evaluation by the Chief Medical Director, Mr. Hickman directed corrective action to

---

2. Cerebrovascular accident is damage to the blood vessels of the brain. *Dorland's Illustrated Medical Dictionary* 307 (27th ed. 1988). Right hemiparesthesia is a "perverted sensation on [the right] side of the body". *Dorland's Illustrated Medical Dictionary* 745 (27th ed. 1988).

3. Ischemic heart disease is a blood deficiency of the heart. *Dorland's Illustrated Medical Dictionary* 857 (27th ed. 1988).

grant disability compensation for heart disease from the date of the previous VA decision, November 24, 1987, which the VA acknowledged. In a rating decision dated September 21, 1988, however, the Veterans Administration determined that because the primary cause of Major Cole's death, as listed on the death certificate, was widespread cancer, his cause of death was not service connected.

On February 10, 1989, the physician who signed the original death certificate revised his findings to indicate that the immediate cause of death was cardiopulmonary arrest, caused by congestive heart failure, which was a consequence of ischemic heart disease. Based upon this revised death certificate, the VA reopened Major Cole's claim on April 7, 1989, and found a service connection for the cause of death, awarding Death and Indemnity Compensation to plaintiff, Major Cole's widow.

Plaintiff then applied to the Air Force Board for Correction of Military Records ("AFBCMR" or "Board") for the correction of Major Cole's military record, on July 11, 1989, seeking to change that portion of her husband's record showing involuntary separation to separation for reasons of medical retirement. At the AFBCMR's request, the Surgeon General's Consultant, Colonel (Dr.) Donald H. Ankov, the Air Force's senior resident expert in cardiology, issued an opinion on March 7, 1990, stating that Major Cole was fit and medically qualified for continued military service at the time of his separation, and that he did not have any physical or mental condition which would have warranted consideration of medical retirement. While Dr. Ankov took into account the abnormal EKGs of 1962 and 1963, he found that these did not indicate that Major Cole had ischemic heart disease while on active duty. Both active duty interpretations of the abnormal EKGs concluded that the EKG changes "were not acute, were nonspecific, and were totally without clinical correlation." Finding evidence beyond all reasonable doubt that Major Cole was medically qualified for continued active duty, Dr. Ankov concluded that no error or injustice occurred, and that the

documented reason for Major Cole's separation was proper.

Both plaintiff and the Disabled American Veterans organization were afforded the opportunity to respond to the Surgeon General Consultant's Advisory Opinion. On behalf of plaintiff, the Disabled American Veterans responded in a letter dated April 23, 1990, urging the AFBCMR to reject the Advisory Opinion and instead find that had additional studies been conducted while Major Cole was on active duty, a correct diagnosis of ischemic heart disease would have been made. Plaintiff herself submitted a rebuttal the following day arguing that the abnormal EKGs demonstrated that Major Cole's heart disease arose while on active duty. However, on October 24, 1990, the AFBCMR determined that the evidence presented did not demonstrate the existence of probable material error or injustice in Major Cole's record, and denied plaintiff's application for correction. In its decision, the AFBCMR adopted the Surgeon General Consultant's Advisory Opinion that the nonspecific T-wave changes did not constitute clinical evidence of heart disease and that Major Cole was qualified for service at the time of his separation. In addition, the AFBCMR reviewed Major Cole's Officer Effectiveness Reports from 1960 to 1963, and found that his performance ratings had fallen from effective and competent to slightly below average to marginal. None of the performance ratings gave any indication that Major Cole was not physically fit for duty, but they did suggest the reason why he was not selected for promotion, and was ultimately separated from the Air Force.

On plaintiff's behalf, the Disabled American Veterans organization requested a reconsideration of the AFBCMR's decision on February 14, 1991. The VA, on plaintiff's behalf, submitted the letter from Mr. Hickman, dated August 30, 1988, to the AFBCMR as newly discovered evidence to support a finding that Major Cole incurred cardiovascular disability while in active military service, and that this disability was present at the time of his release from active duty. On February 22, 1991, the AFBCMR declined to reconsider its opinion

on the grounds that Mr. Hickman's letter did not meet the criteria of newly discovered evidence. Plaintiff filed this suit on April 14, 1992, and defendant moved for summary judgment on June 15, 1992.

## DISCUSSION

*Jurisdiction*

■■■ Pursuant to the Tucker Act, 28 U.S.C. § 1491 (1988), the Claims Court has jurisdiction over claims against the United States founded on a statute mandating compensation by the government. *United States v. Testan*, 424 U.S. 392, 401–02, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). The Secretary of a military department may adjust a military record in order to correct an error or to remove an injustice. If, as a result of such correction, an amount of lost pay, allowance, compensation or other pecuniary benefit is found to be due the claimant, or his legal representative, the Secretary shall then pay this amount. 10 U.S.C. § 1552 (1988 & Supp. II 1990). This statute provides the specific basis for Tucker Act jurisdiction. Thus, the Claims Court may order the correction of military records only if the order of correction is "an incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2) (1988); *Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).

*Standard of Review*

■■■ Plaintiff is bound by the AFBCMR's determination that decedent, Major Cole, was physically fit for duty at the time of his discharge from the Air Force, unless she can establish by "cogent and clearly convincing evidence," *Dorl v. United States*, 200 Ct.Cl. 626, 633, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973), that the AFBCMR's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir.1983); *Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979).

In order to overturn the AFBCMR's decision, plaintiff must establish the existence of error, and must also show "an adequate nexus between the error or injustice and [Major Cole's] separation from the service without disability compensation." *Renicker v. United States*, 17 Cl.Ct. 611, 614 (1989). Title 10, section 1552 of the United States Code confers a certain amount of discretion to the secretaries of the military. Thus, in reviewing the AFBCMR's decision, the court must presume "that the administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813. Determining who is fit or unfit to serve in the armed forces is not a function of the judiciary. *Heisig*, 719 F.2d at 1156; *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). When reasonable minds could reach differing conclusions, the court will not substitute its judgment for that of the AFBCMR's. *Sanders*, 594 F.2d at 814. The court's task is to examine the decision of the AFBCMR and determine whether its decision is supported by substantial evidence. *Heisig*, 719 F.2d at 1157.

*Summary Judgment*

Summary judgment is appropriate when there is "no genuine issue as to a material fact" so that the moving party "is entitled to judgment as a matter of law." RUSCC 56(c) (1991). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., Inc. v. United States*, 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds*, 923 F.2d 830 (Fed.Cir.1991). In order to show that a material fact is genuinely at issue, the non-movant must do more than present "some" evidence on the disputed issue. *Liberty Lobby, Inc.*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11. As the Supreme Court stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a [court] to return a verdict for that party. If the evidence [of the non-movant] is merely colorable, or is not significantly probative,

summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11 (citations omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987) (holding that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' "). In order to grant summary judgment, the court must determine whether defendant's decision not to change the records of the plaintiff's decedent to show that he was retired for medical disability was arbitrary, capricious, contrary to law or unsupported by substantial evidence.

 Defendant moved for summary judgment, arguing that the AFBCMR's conclusion that Major Cole was not disabled while serving on active duty was supported by substantial evidence. Plaintiff argued that expert medical testimony directly contradicting the Board's finding is a genuine issue of fact, and that the Board's conclusion was not supported by substantial evidence. In reviewing the October 24, 1990, decision of the AFBCMR, the court finds reference to a June 16, 1988, VA rating, but is unable to find mention of the revised VA rating decision of April 7, 1989, indicating a service connection for the cause of death. Because the AFBCMR only mentioned the old VA rating as support for its decision, the court is uncertain whether the Board considered the revised rating in its determination of plaintiff's claim. Proper process requires the Board to at the least consider the revised VA rating in determining whether or not to adjust Major Cole's record.

Based on the incomplete record before the court, summary judgment is inappropriate. The validity of evidence supporting the Board's decision is a material fact genuinely at issue. Therefore, the court remands this case to the AFBCMR to consider the VA rating decision of April 7, 1989, in evaluating plaintiff's claim. "In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such discretion as it may deem proper and just." 28 U.S.C. § 1491(a)(2) (1988); *Barth v. United States*, 24 Cl.Ct. 836, 842 (1992).

## CONCLUSION

Accordingly, defendant's motion for summary judgment is denied. Pursuant to RUSCC 60.1, the court remands this matter to the Air Force Board for Correction of Military Records for consideration of the April 7, 1989, Veterans Administration rating decision. While the issue is under consideration by the AFBCMR all actions in this court are suspended. Beginning 120 days from the date of this order, plaintiff is directed to file monthly status reports, informing the court of the status of the proceedings on remand.

IT IS SO ORDERED.