**Phillip D. MILLER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 615–89C.**

United States Court of Federal Claims.

Aug. 13, 1993.

Eugene R. Fidell, Washington, DC, attorney of record, for plaintiff.

John S. Groat, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, DC, with whom were Thomas W. Petersen, David M. Cohen, and Stuart M. Gerson, the Asst. Atty. Gen., attorneys of record, for defendant. Mary Bennett Reed, Dept. of Transp., Washington, DC, of counsel.

1. The court notes that the plaintiff was selected for promotion to the rank of lieutenant by a

*OPINION*

HORN, Judge.

### BACKGROUND

This case comes before the court on defendant's motion to dismiss or in the alternative for summary judgment, and on plaintiff's opposition to defendant's motion to dismiss and cross-motion for summary judgment. Plaintiff, an active-duty officer in the United States Coast Guard, claims he was wrongfully passed over for promotion to the rank of lieutenant in 1987 as a result of an allegedly defective 1984 performance evaluation and the improper selection procedures of the 1987 promotion board.[1] The Coast Guard Board for the Correction of Military Records ("BCMR") considered plaintiff's request for alteration of his records three times and denied his application each time. In this court, plaintiff seeks retroactive adjustment in rank and pay to 1987, that all mention of the 1984 defective performance evaluation and 1987 promotion passover be expunged from his military records, as well as such other relief as may be appropriate.

In its written and oral presentations to the court, the defendant contests the jurisdiction of this court to entertain plaintiff's claim. The government argues that plaintiff fails to state a claim for which this court can provide relief. Furthermore, the government argues that plaintiff's application to the BCMR was untimely with regard to the performance report and that the Board, therefore, acted within its discretion when it refused to review the merits of plaintiff's application to the Board. Finally, the defendant requests summary judgment in its favor and contends that the promotion procedure was adequate and fair to plaintiff.

### FACTS

Plaintiff Phillip D. Miller, a 1982 graduate of the United States Coast Guard Academy, currently serves on active duty as a lieutenant in the Coast Guard. From 1982 until 1984, plaintiff Miller was stationed on

1988 promotion board and was promoted to that rank on May 4, 1989.

board the USCGC VALIANT based out of Galveston, Texas. In 1984, he served at the rank of lieutenant (junior grade) ("LTJG"). In that year, plaintiff's service performance was evaluated by means of an "Officer's Performance Report" ("OPR"), which he has subsequently contested as inaccurate and overly vague. The OPR at issue is the last plaintiff received during his tour on board the VALIANT, and covers his service period from November 19, 1983 to April 11, 1984.[2] The OPR was received in the Coast Guard Headquarters on June 28, 1984, and was placed in plaintiff's record on July 25, 1984, with a copy sent to plaintiff. The 1984 OPR consisted of numerical ratings, accompanied by verbal evaluations. In his complaint, plaintiff challenges the propriety of the OPR, which in pertinent part reads:

\* \* \*

3. ACCOMPLISHMENTS FOR THE PERIOD. . . .
   LTJG MILLER SERVED AS ACTING OPERATIONS OFFICER FROM 11 TO 27 DECEMBER 1983. HE BEGAN THE COAST GUARD INSTITUTE CORRESPONDENCE COURSE FOR COMMUNICATIONS OFFICER. HE SERVED AS KEY MAN FOR THE COMBINED FEDERAL CAMPAIGN ABOARD VALIANT. HE ORGANIZED THE CMC FILES. HE SHOWED INITIATIVE IN IDENTIFYING AND PURCHASING A NYLON BAG FOR USE AS A BOARDING KIT BAG.

4. PERFORMANCE OF DUTIES. . . .
   a. 2.........Planning
   b. 2.........Supervisory and Interpersonal Skills
   c. 2.........Achieving Goals
   d. 2.........Self-development
   e. 3.........Speaking Skills
   f. 3.........Writing Skills
   g. 2.........Technical Skills
   h. 4.........Performance Management Responsibilities

RESPONSIVE TO SHORT TERM GOALS IMPOSED BY SUPERIORS, BUT DOES NOT SET LONG TERM GOALS FOR SUBORDINATES. HAS ONLY LIMITED KNOWLEDGE OF HIS OWN UNIT, PRIMARILY IN THOSE AREAS IN WHICH HE HAS BEEN ASSIGNED DUTIES. SPEAKS CLEARLY IN A MANNER APPROPRIATE TO THE SITUATION—FORMALLY AS AN OOD ON WATCH, CASUAL AND FRIENDLY IN SOCIAL SETTINGS. SUBMITS COMPLETE, PROPERLY FORMATTED PERFORMANCE MANAGEMENT DOCUMENTS. DISPLAYS FAMILIARITY WITH PROGRAM REQUIREMENTS IN SECURITY AND COMMUNICATIONS FIELDS, BUT SOMETIMES FAILS TO ENSURE COMPLIANCE. SECURITY CLEARANCES ROUTINELY LATE UNTIL COMPREHENSIVE REVIEW ORDERED.

\* \* \*

7. ADHERENCE TO COAST GUARD STANDARDS. . .
   a. 2.........Innovation
   b. 3.........Judgment
   c. 4.........Military Bearing
   d. 3.........:.Personal Qualities

I HAVE NOTED THAT DURING THIS PERIOD, MR. MILLER'S PROGRESS IN HIS DEVELOPMENT AS A JUNIOR OFFICER IS NOTICEABLY BELOW HIS PREVIOUSLY ENCOURAGING RATE OF ACHIEVEMENT. DURING THE LAST PATROL HE HAD THE OPPORTUNITY TO ACT AS OPERATIONS OFFICER. I WOULD HAVE EXPECTED HIM TO JUMP AT THE OPPORTUNITY TO SHOW HIS METTLE. UN-

---

**2.** The copy of the OPR included in the record is confusing as to the closing date for the evaluation period. Both on page 1 and page 2 of the OPR the closing date is typed in as 84/03/26. On page one, however, 84/03/26 is crossed out and the date 84/04/11 is written in by hand. The parties both choose the later date in their discussion of the OPR.

FORTUNATELY, HE REQUIRED PROMPTING IN SUBMITTING OPERATIONAL REPORTS. I BELIEVE THIS IS A TEMPORARY LAPSE IN ENTHUSIASM.

\* \* \*

On November 2, 1987, a Coast Guard selection board convened to consider officers eligible for promotion to the rank of lieutenant, including plaintiff. According to the Coast Guard Personnel Manual, promotion selection boards are to be furnished with "[t]he names and records of all officers who are eligible for consideration for promotion to the grade to which the board will recommend officers for promotion...." Due to administrative error, the board did not receive the records of ten of those eligible for promotion. Plaintiff's record was not among those mistakenly left undelivered. The board considered plaintiff's record, including the 1984 OPR in his file. The board selected 337 officers for promotion to the rank of lieutenant, the maximum number of promotions allowed for that board. Plaintiff was not among the officers selected.

On December 7, 1987, the Coast Guard Commandant issued a directive, titled a precept, in an attempt to rectify the irregularities of the November 1987 selection process. This precept authorized nine new lieutenant positions, in addition to the 337 already filled, and called for the selection board to be reconvened to consider whether any of the ten officers previously ignored should be recommended for promotion to any of the newly created positions. The board was directed to recommend for promotion only those of the ten officers considered by the board to be among the best qualified of the entire pool of officers considered in both the November and December sessions of the selection board. The reconvened board was also allowed to review any of the personnel records they had previously considered in the November session. The board reconvened on December 10, 1987 and recommended five officers for promotion. According to the procedure set up by the board, plaintiff was not among those considered by the board when it reconvened.

On January 25, 1988, plaintiff filed an application for correction of his military records with the Coast Guard BCMR. The application requested both that the 1984 OPR be expunged from his record and that any mention of the 1987 passover from promotion be removed from his file. While plaintiff's application was pending before the BCMR, he was selected for promotion to the rank of lieutenant by a later regularly convened session of the next selection board. Plaintiff was promoted to the rank of lieutenant, effective May 4, 1989.

On September 28, 1989, the BCMR denied plaintiff's application. The BCMR rejected plaintiff's request as to the OPR because the application was untimely, having been submitted to the Board after the statutory three-year time limit for filing. 10 U.S.C. § 1552(b) (1988). Although plaintiff had acknowledged in his opinion that the three years had passed, plaintiff nevertheless had asked the BCMR to consider waiving the limitation period "in the interest of justice," as authorized by 10 U.S.C. § 1552(b). The BCMR, however, found that plaintiff had demonstrated no "circumstances which impaired his ability to file" within the three-year limit. Moreover, the Board pointed out that plaintiff had received a copy of the OPR more than three and one-half years prior to his application to the BCMR. The decision also denied the plaintiff's request to remove reference to the 1987 passover from his file. The BCMR noted that the administrative error of the November 1987 selection board session may have resulted in a "statistically better opportunity for selection" for plaintiff by the November selection board. As the BCMR pointed out, the Coast Guard was not obligated to give plaintiff a second opportunity to be considered for promotion in the December session of the selection

board when it reconvened to consider the 10 candidates who had been inadvertently left out of the original consideration.

Plaintiff filed a complaint in this court on November 13, 1989, in which he requested that the court set aside the 1987 passover, with rank and pay to be adjusted retrospectively to 1987, expunge all mention of the passover from his military service record and reverse the decision of the BCMR with regards to the passover. Plaintiff asked the court to remand the case to the BCMR for consideration of whether the interest of justice favors relaxation of the three-year time period in which to consider his application for correction of the 1984 OPR.

Defendant filed a motion to dismiss or for summary judgment, followed by plaintiff's cross-motion for summary judgment. Plaintiff then moved to suspend proceedings while the Coast Guard BCMR reconsidered plaintiff's application. Plaintiff urged the BCMR to allow review of the 1984 OPR in light of § 205 of the Soldiers' and Sailors' Civil Relief Act (SSCRA), 50 U.S.C. app. § 525 (1988), arguing that this section of the SSCRA contains a provision which tolled the applicable statute of limitations. After granting plaintiff the right to have his application to the BCMR reconsidered, on February 7, 1991, the BCMR again denied plaintiff's application for revision of his military records. The BCMR held that the tolling provision of the SSCRA did not provide relief to this plaintiff.

On November 2, 1991, plaintiff once again moved to suspend proceedings in this court while the BCMR reconsidered plaintiff's BCMR application, this time in light of *Allen v. Card*, 799 F.Supp. 158 (D.D.C. 1992). According to plaintiff, the district court in *Allen* held that the interest of justice waiver of the three-year limitations period for bringing actions before the BCMR must involve at least a *"cursory* review of the potential merits" of an individual's application. *Id.* at 164 (emphasis in original). Plaintiff alleges no such review was conducted by the BCMR in plaintiff's case. On March 4, 1993, the BCMR again turned down plaintiff's request. In the BCMR decision, the Board outlined the

general criteria it had used to weigh the potential merits of plaintiff's claims, in prior BCMR reviews of plaintiff's case, as well as the criteria it was using in the current, third review. The BCMR remained unpersuaded that the overriding interest of justice required the Board to look further into the merits of the application. The BCMR, therefore, declined to waive the normal statute of limitations.

In a supplemental memorandum in support of its motion for summary judgment, plaintiff renewed and repackaged his requests to this court in light of the events which had transpired since he filed his original motion. Defendant filed a brief response to plaintiff's supplemental memorandum. Because of the repeated refusal of the BCMR to grant plaintiff's requested relief, in his supplemental memorandum, plaintiff indicated that he no longer was seeking remand of any part of the case to the BCMR. Instead, plaintiff now asks that this court:

(a) enter judgment for plaintiff for the additional pay and allowances he would have received had he been selected by the Lieutenants promotion board that sat in 1987,

(b) direct that his military records be corrected by deleting the disputed OPR and all evidence of his 1987 passover for promotion to the grade of Lieutenant,

(c) award him the costs of this action and a reasonable attorneys fee in accordance with the Equal Access to Justice Act, and

(d) grant such other and further relief as may in the circumstances be just and proper.

## DISCUSSION

■ The defendant filed a motion to dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, or, in the alternative, for summary judgment. Defendant since contended at oral argument that dismissal of the complaint for failure to state a claim under Rule 12(b)(4) is the proper disposition of plaintiff's case. Federal courts, however, even if not moved

by either party, must, *sua sponte*, determine whether they properly have subject matter jurisdiction over the cases that come before them for decision. *M.C. & L.M. Ry. v. Swan*, 111 U.S. 379, 384, 4 S.Ct. 510, 512, 28 L.Ed. 462 (1884); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 70, 60 S.Ct. 44, 47, 84 L.Ed. 85 (1939).

The central jurisdictional provision for this court is the Tucker Act, 28 U.S.C. § 1491 (1988). It confers jurisdiction on this court over any claim against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department ..." 28 U.S.C. § 1491(a)(1).[3] The Tucker Act provides for jurisdiction only when there exists a "substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). *See, e.g., Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967). "A claimant must look beyond the Tucker Act to discover and plead a money mandating predicate upon which to complete jurisdiction." *Westech Corp. v. United States*, 20 Cl.Ct. 745, 748 (1990) (citations omitted). The Tucker Act is "merely jurisdictional, and a grant of a right of action must be made with specificity." *Testan*, 424 U.S. at 400, 96 S.Ct. at 954. "It follows that the asserted entitlement to money damages depends on whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.* (quoting *Eastport*, 178 Ct.Cl. at 607, 372 F.2d at 1009). Or as stated by the United States Court of Appeals for the Federal Circuit:

> the prospective claimant must invoke substantive rights grounded expressly or by implication in a contract, an act of Congress or a regulation of an executive department. *See United States v.*

*Mitchell*, 463 U.S. 206, 217 & n. 16, 103 S.Ct. 2961, 2968 & n. 16, 77 L.Ed.2d 580 (1983); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605, 607, 372 F.2d 1002, 1007, 1009 (1967).

*United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984); *see also Dehne v. United States*, 970 F.2d 890 (Fed.Cir.1992).

The United States Court of Claims, the predecessor to this court, has held that, even though the plaintiff may not ultimately prevail, "a claimant who says he is entitled to money from the United States because a statute or a regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous, but arguable." *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 125, 340 F.2d 663, 667–8, *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965); *accord Sanders v. United States*, 219 Ct.Cl. 285, 295, 594 F.2d 804, 809–10 (1979); *Eastport S.S. Corp.*, 178 Ct.Cl. at 606, 372 F.2d at 1008. For example, the Court of Appeals for the Federal Circuit has held that the "jurisdictional prerequisite" for 37 U.S.C. § 206(a) (1988), which mandates pay for members of the National Guard is that the claimant be a member of the National Guard. *Dehne v. United States*, 970 F.2d at 892; *cf. Banks v. Garrett*, 901 F.2d 1084 (Fed.Cir. 1990).

■ In the instant case, the primary jurisdictional concern is whether plaintiff has stated a claim for money damages against the United States to which he is at least "arguably" entitled under the Constitution, or a federal statute or regulation. Plaintiff maintains, *inter alia*, that his entitlement to sue in this court is founded on 14 U.S.C. § 262(b) (1988), and, alternatively, by refer-

---

3. 28 U.S.C. § 1491(a)(2) also provides:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and

correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

ence to both 37 U.S.C. § 204 and 10 U.S.C. § 1552 (1988).[4]

According to the plaintiff, jurisdiction in this court is proper based on 14 U.S.C. § 262(b). Although there appears to be virtually no case law interpreting this provision, on its face, 14 U.S.C. § 262(b) creates a legal entitlement to have an individual's rank retroactively readjusted, if a Coast Guard officer is passed over for promotion because of administrative error, but is then selected by the next selection board. Because an active-duty officer is statutorily entitled to pay in accordance with his rank, 37 U.S.C. § 204, 14 U.S.C. § 262(b) appears to be a statute which can result in monetary damages in the form of back-pay award, and, therefore, form the basis for jurisdiction in this court.

■ Although plaintiff has properly invoked the review powers of this court, and the relevant facts of when the selection board met and when plaintiff's opportunity for promotions was considered are not in dispute, plaintiff has failed to state a claim upon which relief can be granted, and application of the facts of plaintiff's case to 14 U.S.C. § 262(b) do not entitle this plaintiff to relief. Plaintiff argues that he was wrongfully excluded from consideration for promotion during the December, 1987 meeting of the promotion board, and that because he was thereafter promoted by the next regular meeting of a promotion board in 1988, he is entitled to retroactive adjustment of his promotion date, in accordance with 14 U.S.C. § 262(b). Section 262(b) provides relief for an officer passed over for promotion only when a promotion board fails entirely to consider the eligible officer because of administrative error, not when the irregularities of the promotion board are of some other kind, and not when an officer such as plaintiff was considered for promotion by the board. 14 U.S.C. § 262(b).

In order for plaintiff to succeed in his claims, the December meeting of the 1987 promotion board, at which plaintiff's promotion was not considered, must be found by the court to be a separate and distinct promotion board from the November promotion board, which fully considered plaintiff's promotion. Upon careful review of the record and the relevant regulations and statutes, the court concludes that the actions of the 1987 November and December selection committee meetings are properly viewed as the actions of a single promotion board. Thus, plaintiff has failed to state a claim under 14 U.S.C. § 262(b), because he does not meet the test that he was "not

---

4. These statutes, in relevant part, provide:

An officer shall not be considered to have failed of selection if he was not considered by a selection board because of administrative error. If he is selected by the next succeeding selection board and promoted, he shall be given the date of rank and position on the active duty promotion list in the grade to which promoted that he would have held had he been recommended by the first selection board.

14 U.S.C. § 262(b) (1988).

The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title—(1) a member of a uniformed service who is on active duty ...

37 U.S.C. § 204 (1988).

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of Transportation may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States. (b) No correction may be made under subsection (a) unless the claimant or his heir or legal representative files a request for the correction within three years after he discovers the error or injustice. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice. (c) The Secretary concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be....

10 U.S.C. § 1552 (1988).

considered by a selection board because of administrative error." 14 U.S.C. § 262(b) (1988). A number of facts support the conclusion that the two meetings of the 1987 promotion board comprised a single selection board.

A certain indication that the Coast Guard intended both sessions to be part of the proceedings of the same promotion board is that during both sessions the same officers served as members of the promotion board. Pursuant to 14 U.S.C. § 252, no officer may be a member of two successive boards convened to consider officers of the same grade for promotion. Thus, the court is faced with the choice of deciding that the second session was a separate board, convened in clear violation of the law, or deciding that the two sessions were parts of the same board. The court notes the general judicial presumption in favor of the regularity of actions taken by military and other public officials. As stated in *Braddock v. United States,*

> The Court of Claims has repeatedly held that, in order to overturn a correction board's decision, a claimant must present "cogent and clearly convincing evidence." *Cooper v. United States,* 203 Ct.Cl. 300, 304–05 [, 1973 WL 21358] (1973). A claimant is required to overcome the presumption that "administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States,* 219 Ct.Cl. at 302, 594 F.2d at 813, *cited with approval in Grieg v. United States,* 226 Ct.Cl. 258, 640 F.2d 1261 (1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). *See also Bockoven v. Marsh,* 727 F.2d 1558, 1563 (Fed.Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984), where the Federal Circuit recently stated that highly trained and disciplined Army officers should be presumed to have followed direct orders to disregard any information not properly before them in making their selection decisions.

9 Cl.Ct. 463, 472 (1986). Although plaintiff has alleged that the November and December sessions constituted two separate boards, plaintiff has offered nothing other than a bald allegation in support of his assertion.[5] In the absence of a strong showing to the contrary, the court concludes that the two sessions were part of the same regularly constructed board.

Another sign that there was only one 1987 promotion board is that the precept which convened the December session clearly directed the board to select for promotion only those officers who were best qualified of all those considered in both the November and December 1987 sessions. Moreover, section 14–A–3 of the Coast Guard Personnel Manual states that, within certain parameters, each board should develop its own standards and criteria for evaluating candidates for promotion. The precept which convened the December 1987 session clearly directed the members of the board to follow the criteria these same members had developed for use in their November 1987 session.

The "PRECEPT RECONVENING A SELECTION BOARD TO CONSIDER 10 OFFICERS OF THE COAST GUARD ON ACTIVE DUTY PROMOTION LIST FOR PROMOTION TO THE GRADE OF LIEUTENANT," dated December 7, 1987, reads in pertinent part,

> Due to administrative error, the records of the above officers were not considered for selection to lieutenant by the Lieutenant Selection Board first convened on 2 November 1987. This board is being reconvened to consider these officers for promotion to lieutenant on a best-qualified basis. The board may select up to 9 officers whom it considers to be best-qualified for promotion to lieutenant. Members of the board shall reswear or reaffirm that they will, without prejudice or partiality, and having in view both the special fitness of officers

---

**5.** In fact, in his supplemental memorandum filed with the court, plaintiff states, "[a]s explained in our cross-motion (at 9–12), the instructions that were furnished to the *1987 promotion board* for its second sitting were erroneous because...." (emphasis added), thereby, almost conceding that there was only one 1987 promotion board.

and the efficiency of the Coast Guard perform the duties imposed upon them.

In order for you to make a best-qualified determination, you are being provided all the records of officers considered above and in zone by the Lieutenant Selection Board first convened on 2 November 1987, as well as the records for all officers selected from below the zone. You are also being provided a complete list of selectees, non-selectees, and all officers considered below the zone but not selected by that board. Any or all of the records of those officers from below the zone who were not selected will be provided upon request.

Selection or non-selection of the officers now being considered will have no effect on the selection status of those lieutenants (junior grade) previously selected for promotion to lieutenant. The board shall refer to the provisions of references (c) and (d) for guidance. *Subject only to the law, the board is governed by its own judgment and the criteria for qualification used by the Lieutenant Selection Board first convened on 2 November 1987.* At the end, all members must be able to say that the officers recommended for promotion are, in the opinion of at least two-thirds of the members of the board, *best-qualified of all those considered by this board and the 2 November 1987 Lieutenant Selection Board.* You should emphasize to the members of the board the importance of the obligation they have assumed upon being selected to serve on this special board. Selection of any of these officers to the grade of lieutenant in the Coast Guard must be founded on the clear conviction of a two-thirds of the members of the board that they are, in fact, those best qualified to carry out the duties and responsibilities of that grade. (Emphasis added.)

In short, all considerations point to the conclusion that the December session of the 1987 promotion board did not constitute a separate and independent board from the November 1987 session. The December session was designed and intended as a corrective extension of the November session, and there is no indication in the record that it did not function as such. Plaintiff, therefore, fails to state a cognizable claim under 14 U.S.C. § 262(b).

■ As an alternative theory entitling him to relief, plaintiff claims a right to retroactive promotion and adjustment in pay created by reference to both of 10 U.S.C. § 1552 and 37 U.S.C. § 204. Under 37 U.S.C. § 204, active duty personnel are entitled to basic pay. 10 U.S.C. § 1552 establishes the BCMR and defines its powers. Plaintiff bases his claim on the theory that "had the BCMR done its job properly, Lieutenant Miller's date of rank would have been adjusted, and he would have been *statutorily entitled* to the corresponding pay and allowances." (Emphasis in original.) In essence, despite plaintiff's repeated assertion that "[t]he only question is what his date of rank should be," plaintiff, in effect, asks that the court promote him retroactively. While it is true that plaintiff was promoted in 1988 to the rank of lieutenant, one year after he had been passed over, he was promoted in an entirely separate proceeding, by a different and newly constituted selection board. We, therefore, fail to see how the fact that plaintiff has now been promoted to the rank of lieutenant distinguishes this situation from one in which a plaintiff alleges he had been wrongly passed over for promotion, but in which the plaintiff remained at the lower rank when he filed a complaint in this court.

Moreover, under neither scenario will this court grant a plaintiff a promotion in military rank. A court should not infringe upon the discretionary process of selection for promotion. *Skinner v. United States,* 219 Ct.Cl. 322, 332, 594 F.2d 824, 830 (1979). "We have repeatedly refused to interject ourselves into the discretionary military promotion process even if legal error was in some respect committed as to the complaining serviceman." *Doggett v. United States,* 207 Ct.Cl. 478, 482, 1975 WL 22827 (1975) (citations omitted). "The established rule is that one is not entitled to the benefit of a position until he has

been duly appointed to it." *United States v. Testan,* 424 U.S. at 402, 96 S.Ct. at 955 (citations omitted). Furthermore, "[w]hatever control courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions." *Orloff v. Willoughby,* 345 U.S. 83, 90, 73 S.Ct. 534, 538, 97 L.Ed. 842 (1953). "Accordingly, 'unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude on the authority of the Executive in military and national security affairs.'" *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988) (quoting *Department of Navy v. Egan,* 484 U.S. 518, 530, 108 S.Ct. 818, 825, 98 L.Ed.2d 918 (1988)).

Despite this long and solid line of precedent to the contrary, plaintiff cites to a litany of case law in an attempt to support the proposition that this court has the power to grant the relief he seeks. Plaintiff relies heavily on *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), and the cases cited therein, especially at page 303, 103 S.Ct. at 2367. Upon close examination of these cases, it is clear that plaintiff's citations are inapposite. In *Chappell v. Wallace,* the Court wrote:

> The Board is empowered to order retroactive backpay and retroactive promotion. 10 U.S.C. § 1552(c). Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence. *See Grieg v. United States,* 226 Ct.Cl. 258, 640 F.2d 1261 (1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979).

*Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). Plaintiff's contentions should be rejected on at least two grounds. First, the issue in *Chappell* was not whether courts can order retroactive promotion for military officers, but whether members of the military can claim a right to money damages based upon alleged constitutional violations perpetrated against them by superior officers. Furthermore, while the statements of the *Chappell* court are correct that the BCMR can order retroactive backpay and retroactive promotion, and that the courts can review the actions of the BCMR, this does not necessarily mean a court itself can offer all forms of relief the BCMR can offer. In neither *Grieg* nor *Sanders* did the court exercise jurisdiction over review board decisions in which the BCMR failed to award retroactive promotion. In both of these cases, the plaintiff had already been separated from the military and primarily sought reinstatement. In fact, in *Grieg,* the panel reviewed the trial judge's decision and noted, "[p]romotion, of course, was correctly denied as beyond the court's jurisdiction." *Grieg v. United States,* 226 Ct.Cl. 258, 264, 640 F.2d 1261, 1265 (1981). In *Sanders,* the plaintiff, an Air Force Captain who had been involuntarily separated from the military, withdrew a claim for promotion he had made originally. If he had not, the court reasoned, the issue of jurisdiction over this claim would have had to have been examined because, *"Testan's* application to the claim undoubtedly would have had to be considered." *Sanders v. United States,* 219 Ct.Cl. at 296, 594 F.2d at 810.

Plaintiff also quotes the following passage from *Dehne v. United States* in support of his assertion that this court has jurisdiction over his claim: "We recognize that military personnel who are seeking a pay differential between current pay and that of a higher rank for active service may properly state a claim for back pay under the Tucker Act." *Dehne,* 970 F.2d at 894 (citations omitted). Not only is this statement dictum in the *Dehne* case, but plaintiff also takes the statement out of context if he means to suggest that this court has jurisdiction to offer plaintiff a retroactive promotion. In *Dehne,* the plaintiff sought retroactive pay for a position to which he had been retroactively promoted by the Air Force BCMR. The distinction between that case and the case at bar is significant: in *Dehne,* the military, by virtue of the ac-

tions of the Air Force BCMR, had already awarded the plaintiff retroactive promotion when he brought his claim for back pay to the court. Thus the passage in *Dehne* stands only for the proposition that the court may entertain a claim for back pay by a military officer when the BCMR has already awarded retroactive promotion. *Dehne* is, therefore, entirely consistent with *Testan* and its progeny. In the instant case, the plaintiff asks the court to award retroactive promotion, as well as back pay. The court cannot promote the plaintiff, and absent prior promotion by the military, the court cannot award the back-pay plaintiff seeks.

Other cases that the plaintiff cites are equally unpersuasive. It is true that the court may review actions of the BCMR when a plaintiff claims to have been improperly discharged from the military, *see, e.g., Gant v. United States*, 918 F.2d 168 (Fed.Cir.1990), or when a spouse of a deceased former military officer claims to have been improperly denied disability retirement pay, *Cole v. United States*, 26 Cl.Ct. 1018 (1992). Nevertheless, we have found no case in which the court has tread upon the discretionary authority of the military and ordered the promotion of any service member, and this court will not do so either.

■ Based on the reasons articulated above, defendant's motion must be granted and this case should be dismissed. But, even if this court were empowered to offer plaintiff a retroactive promotion, the court would be unlikely to award plaintiff such relief based on the merits of the record presented. Plaintiff contends that the actions of the 1987 promotion selection board were in error because the members of the board at their December 1987 session failed to consider plaintiff for any of the nine additional positions authorized to remedy the administrative omission error to consider ten eligible candidates at their earlier November 1987 session. Plaintiff further contends that the BCMR therefore abused its discretion in deciding not to void plaintiff's passover by the 1987 selection board based on the irregular procedures of the 1987 selection board.

Plaintiff bases his argument that the actions of the selection board were unlawful in part on statute and in part on provisions included in the Coast Guard Personnel Manual. Plaintiff cites 14 U.S.C. § 259(a) as authority for the view that plaintiff "had a right to be considered on a 'best qualified' basis for each and every vacancy the 1987 selection board was authorized to fill," including the nine additional positions authorized by the December precept. According to 14 U.S.C. § 259(a):

> A selection board convened to recommend officers for promotion shall recommend those eligible officers whom the board considers best qualified of the officers under consideration for promotion. No officer may be recommended for promotion unless he receives the recommendation of at least a majority of the members of a board composed of five members, or at least two thirds of the members of a board composed of more than five members.

14 U.S.C. § 259(a) (1988).

On its face, this section simply requires that the selection board recommend only the eligible officers it considers best qualified. While it does not provide for division of the group of eligible officers into subzones, neither does it prohibit such a division. In the present case, the December 7, 1987 precept, which reconvened the promotion selection board, clearly directed the board to select only those among the ten officers who had been inadvertently omitted from considerations at the November session, who two-thirds of the board believed to be among the "best qualified of all those considered by this board and the 2 November 1987 Lieutenant Selection Board." The procedure described by this directive is within the letter of 14 U.S.C. § 259(a), and does not represent arbitrary or capricious action by the Coast Guard.

Furthermore, there is authority to suggest that a group of candidates for promotion may be divided into two groups before being considered for promotion. In *Blevins v. Orr*, 721 F.2d 1419 (D.C.Cir.

1983), the Court of Appeals for the District of Columbia Circuit refused to invalidate an Air Force promotion procedure in which a single batch of eligible officers was subdivided and considered by different selection boards. Plaintiff attempts to distinguish this case on the basis that the division in the present case was accidental, rather than intentional. This distinction, however, does not refute the fact that the *Blevins* decision confirms the fact that branches of the military are free to exercise broad discretion over the precise mechanisms for promotion. As stated in *Blevins:*

> We have found no authority, nor has appellant cited any, to support the argument that the determination to select officers for promotions through splitting the selection board—even if the number of promotions proves to be lower than in prior years—is violative of any constitutional, statutory or regulatory requirement, or is otherwise arbitrary or capricious.

*Blevins v. Orr,* 721 F.2d at 1423.

Plaintiff also cites several sections of the Coast Guard Personnel Manual to support his allegations that the 1987 selection board procedures were illegal.

14–A–1 GENERAL

\* \* \* \* \* \*

c. Personnel boards, such as those responsible for selection of officers on the ADPL to grades above lieutenant (junior grade) ... select on a best qualified basis.... In a best qualified system, the boards are limited to a specific number they may select. Accordingly, in addition to the fully qualified standard, the board must also make selections based on the comparison of each officer with all others considered. This procedure permits the board to select from the entire group the limited number who they feel are the best qualified.

\* \* \* \* \* \*

14–A–10 SELECTION BOARDS FOR PROMOTION FROM LIEUTENANT (JUNIOR GRADE) THROUGH REAR ADMIRAL

\* \* \* \* \* \*

e. *Information To Be Furnished To Selection Boards.* The Commandant shall furnish the appropriate selection board with:

(1) the number of officers that the board may recommend for promotion to the next higher grade; and

(2) the names and records of all officers who are eligible for consideration for promotion to the grade to which the board will recommend officers for promotion, with identification of those officers who are in the promotion zone.

In addition, section 14–A–6 of the Coast Guard Personnel Manual is also relevant:

14–A–6 PROCEDURE FOR BOARDS CONSIDERING OFFICERS ON A BEST QUALIFIED BASIS

a. Boards convened to consider officers on a best qualified basis for promotion, continuation of active duty, retention in a particular occupational field, or appointment in another status, may only recommend for promotion, continuation, retention or appointment the number specified in the precept.

b. In arriving at recommendations, comparisons should be made among all officers whose names are submitted to the board for consideration. The extent to which these officers measure up, among themselves, in accomplishments in past assignments and potential for greater responsibility according to the overall criteria adopted by the board, should be the basis for recommendation (except that below the zone promotion selections are limited by article 14–A–10 f. [sic])

Sections 14–A–1c and 14–A–6 require that promotion boards applying the statutory "best qualified" standard "select from the entire group" of eligible officers submitted to the board for consideration. Plaintiff argues that since plaintiff was not considered for any of the nine additional positions authorized by the December 7, 1987 precept, this regulation was violated.

Plaintiff further relies on Article 14–A–10e(2), which he contends "permits a selection board to compare only the personnel records of officers who may be recommended for promotion."

The court, however, does not believe that the BCMR abused its discretion in refusing to invalidate the actions of the selection board, based on the directions contained in the Coast Guard manual. Neither Article 14–A–1(c), nor Article 14–A–6, states that the entire group of eligible officers must be considered at one sitting. Rather, these articles merely direct that each officer in a given group of eligible officers be compared to all others in the group in order that the selection committee achieve the goal of selecting the best qualified officers from the entire group of eligible officers.

Nor does the Coast Guard Personnel Manual, especially Article 14–A–10(e), support plaintiff's contention that the December 1987 session of the selection board should not have been able to review the records of officers previously considered in the November session, but not under consideration for promotion in the December session. The manual requires that the selection board receive the records of all officers eligible for consideration for promotion and to make the "best qualified" evaluation. Moreover, the manual contains no prohibition against the consideration of any particular information by the reviewing promotion board members. Each eligible officer, including plaintiff, was given a single review for promotion. No officers considered for promotion in the November session were reevaluated in the December session. Far from being contrary to Coast Guard regulations, it was necessary for the December session of the 1987 selection board to review the records of officers who had been considered for promotion during the November 1987 session of the board in order for the board to make "best qualified" determinations for the nine additional slots, of which the board ultimately filled only five.

Finally, even if plaintiff were able to show that the procedures of the 1987 promotion board and the BCMR were contrary to law or statute, plaintiff has still not demonstrated that he was prejudiced in any way by the irregular procedure. *See Braddock v. United States,* 9 Cl.Ct. at 472. Plaintiff argues, however, that he was injured because he "could have been selected" had the board been authorized in the December session to reconsider for promotion officers it had passed over in its November session.

Although the court is convinced that the two sessions of the 1987 promotion board constituted one promotion board, this does not mean that there were no technical errors in the way the board proceedings were conducted. Section 255 of title 14 describes the procedure for determining the number of officers to be selected for promotion by a board, but makes no provision for the creation of additional positions in the event of administrative error. Although there was apparently no authority for the creation of the nine possible extra positions, of which five actually were filled, the creation of these positions appears to have been harmless error vis-a-vis plaintiff Miller. Plaintiff was duly considered at the November 1987 session of the promotion board. Moreover, as the BCMR pointed out in its first review of plaintiff's case, plaintiff's chances for promotion, actually, were enhanced statistically by the administrative error of omitting 10 officers from the November 1987 promotion review. Since the error caused 10 fewer candidates to be considered by the promotion board in its November session, the probability that any individual officer would have been selected for promotion by the board in the November session was greater than if the board had considered the records of all the eligible officers in the appropriate promotion zone at the November meeting.

■ In addition to the other defects, plaintiff's application to the BCMR for correction of his 1984 OPR appears to have been time barred. Plaintiff made his first application to the BCMR for correction of his military record more than three years after he was mailed a copy of the OPR at issue. Subsection 1552(b) of title 10 provides, in pertinent part,

No correction may be made under subsection (a) unless the claimant or his heir or legal representative files a request for the correction within three years after he discovers the error or injustice. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

10 U.S.C. § 1552(b).

Despite the relevance of the three-year statute of limitations to his case, and plaintiff's acknowledgement that he filed his application to the BCMR late, plaintiff, nonetheless, maintains that his application to the BCMR for the correction of the OPR should not be time barred because the three-year limitations period was tolled by § 205 of the Soldiers and Sailors Civil Relief Act (SSCRA). 50 U.S.C. app. § 525 (1988). The statute provides, in relevant part:

§ 525. Statutes of limitations as affected by period of service

The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued *prior to or during the period of such service*. . . .

50 U.S.C. app. § 525 (1988). In the instant case, the government argues that the application of the SSCRA to the plaintiff's case and other similar cases would yield "absurd" results. In particular, the government is concerned about the possibility that career servicemen would be able to "delay the entire length of their military career plus three years before filing an application for correction of their records."

We believe that the plaintiff's interpretation of the SSCRA is plainly at variance with the policy of the legislation as a whole. As stated in the SSCRA, the purpose of the SSCRA is as follows:

§ 510. Purpose, suspension of enforcement of civil liabilities

In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act [sections 501 to 591 of this Appendix] remains in force.

50 U.S.C. § 510 (1988). The legislative history of the SSCRA further clarifies the purposes of the Act. The SSCRA was designed to protect members of the military from "harassment and injury to their civil rights during their term of military service and to enable them to devote their entire energy to the defense needs of the Nation." S.Rep. No. 2109, 76th Cong., 3d Sess. 4 (1940). See also Statement of Henry Stimson, Secretary of War, submitted to the record, S.Rep. No. 2109, 76th Cong., 3d Sess. 4–6 (1940). Furthermore, according to a statement by Congressman Brooks made during the House debate on the 1942 amendments to the SSCRA, the need for the bill "springs from the inability of the men who are in service to properly manage their normal business affairs while away." 88 Cong.Rec. 5368 (1942).

Thus, it is clear that a primary purpose of the SSCRA, as passed, and amended, was to strengthen the military by protecting service members from civil liability which might arise during the course of their terms of military service. To apply the SSCRA to toll the statute of limitations on actions before military review boards

would achieve the opposite effect, weakening the military by limiting its discretion to conduct its internal affairs. Although not specifically called upon to decide the issue in the context of the instant case, this court agrees with the recent order and reasoning of the United States District Court for the District of Columbia that the tolling provision of the SSCRA does not apply to actions before the BCMR. *Allen v. Card,* 799 F.Supp. 158, 161 (D.D.C.1992).

█ Last, plaintiff also argues that even if the SSCRA does not apply to actions before the BCMR, the BCMR abused its discretion in failing to waive the limitations period in the "interest of justice," pursuant to 10 U.S.C. § 1552(b). The Coast Guard BCMR reviewed plaintiff's application for correction of his military records three times. On the third review, the BCMR reviewed the application in light of an additional issue also addressed in the recent district court order in *Allen v. Card,* 799 F.Supp. 158 (D.D.C.1992), as requested by plaintiff. The *Allen* court reviewed the case law and found that "the longstanding practice of the BCMR is to make a *cursory* review of the potential merits as one factor in the interest of justice analysis. This falls far short of performing a full-blown analysis of the merits." *Id.* at 164, (emphasis in original). The *Allen* court went on to write,

[i]f a claim appears particularly meritorious, it may be in the interest of justice to provide a complete review of the merits, even if there has been a delay in bringing the claim. The longer the delay has been and the weaker the reasons for the delay are, the more compelling the merits would need to be to justify a full review.

*Id.* at 164–65.

This court agrees with the conclusion of the *Allen* court that this formula is a workable and reasonable compromise between an analysis implicating a full review of the merits, thereby rendering the statute of limitations a "nullity," *id.* at 164, and an analysis which would omit any review of the merits and which, thereby, might allow a "particularly meritorious" claim to go unremedied. *See also Mullen v. United States,* 17 Cl.Ct. 578, 580 (1989) (noting that an Army BCMR had "consistent with 10 U.S.C. § 1552(b) (1982), examined the underlying merits of the application to determine whether it was in the interest of justice to waive the time limitation").

In its first review of plaintiff's application, the BCMR noted that plaintiff had been aware of the disputed performance report for "approximately three-and-one-half years prior to his application." The BCMR went on to note that plaintiff had not "demonstrated any circumstances which impaired his ability to file in a timely fashion." Upon the BCMR's third review, the board stated it had,

looked to such factors as whether the applicant raised allegations that were so serious or substantial that a more deliberative investigation was warranted; whether violations of statutes, regulations, or published procedures were readily apparent; and whether there was a strong showing of clear error, abuse of discretion, actions amounting to bad faith or fraud, etc.

Based on these factors the BCMR in its third review issued the following conclusions:

No such factors were apparent in the Board's review. Rather, the case raises fairly typical officer evaluation report issues, in an area in which there is of course a strong presumption that the rating officials have discharged their duties correctly, lawfully and in good faith. *Hary v. United States,* 223 Ct.Cl. 10 [, 618 F.2d 704] (1980). Most BCMR applications challenging officer evaluation report marks and comments are not granted, and, in the Board's experience, those that are have involved evidence stronger than was presented here.

The BCMR, thus, considered the length of plaintiff's delay, the reasons for the delay, and gave a cursory look to the potential merits of plaintiffs's claim, fulfilling the letter of the *Allen* decision. Nonetheless, plaintiff contends that the BCMR abused its discretion because:

[w]hile the board has given an informative summary of the kinds of generic factors it considered in deciding not to invoke the interest of justice clause, but [sic] it failed to state how it reached the decision it did with respect to the particular claims plaintiff asserted regarding the disputed OPR. This is invalid because it thwarts meaningful judicial review.

The regulation covering the written decision of the BCMR specifies that the BCMR "prepares a written decision containing its findings, conclusions, and recommendations with respect to the relief sought by the applicant or found by the Board to be appropriate." 33 C.F.R. § 52.35–1(d) (1988). Judicial review, however, is not defeated, even if a board's written report is conclusory, if there is sufficient basis in the record for review by the court. *See Devices for Medicines, Inc. v. Boehl*, 822 F.2d 1062, 1068 (Fed.Cir.1987); *ACS Hosp. Sys. Inc. v. Montefiore Hosp.*, 732 F.2d 1572 (Fed. Cir.1984); *cf. Jones v. United States*, 7 Cl.Ct. 673, 679 (1985) (holding that the Secretary of the Army's failure to submit reasons for a decision to the Army BCMR was harmless error when the decision was supported by the record).

Based on the record before the court, it appears that the BCMR's determination that the interest of justice does not require "a more deliberative investigation" of the merits of plaintiff's case. Moreover, the statements that plaintiff has provided to rebut the conclusions in the 1984 OPR attest only to the plaintiff's general competence and good character; they are not necessarily inconsistent with the statements included in that OPR. Therefore, the BCMR did not abuse its discretion.

## CONCLUSION

After careful consideration of the record and filings submitted by the parties, and of the arguments presented at oral argument, the court concludes that the plaintiff fails to state a claim upon which this court can grant relief. The defendant's motion to dismiss is **GRANTED**.

IT IS SO ORDERED.