**Dr. Alan P. NEUREN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–44C.

United States Court of Federal Claims.

July 22, 1998.

Chuck R. Pardue, Augusta, Georgia, with whom was Laura J. Beck, Washington, D.C., for plaintiff.

Armando O. Bonilla, with whom were James M. Kinsella, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, and Frank W. Hunger, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Lt. Randolph N. Blair, United States Navy, of counsel.

## OPINION

SMITH, Chief Judge.

This case is before the court on defendant's motion to dismiss and the parties' cross-motions for judgment on the administrative record. Plaintiff, Dr. Alan P. Neuren, contends that the Department of the Navy acted arbitrarily, capriciously and ignored substantial evidence in determining that Dr. Neuren's medical condition rendered him physically unfit for duty and restricted his activity with the Naval Reserves to non-pay billets. Dr. Neuren seeks back pay from the time that the Medical Evaluation Board determined he was physically unfit for duty, and reinstatement into active duty Naval Reserves retroactive to the date of discharge.

### FACTS

The facts, unless otherwise noted, are taken from plaintiff's amended complaint and the administrative record and are presumed true for purposes of consideration of the motion to dismiss. Dr. Neuren is currently a Commander in the Medical Service Corps of the United States Naval Reserves. In October 1986 Dr. Neuren began service in the Naval Reserves. On January 29, 1991, Dr. Neuren was recalled to active duty in support of Operation Desert Storm. On February 1, 1991, Dr. Neuren reported for active duty at the Naval Hospital, San Diego. Shortly thereafter, Dr. Neuren requested voluntary recall to active duty, which was approved in April 1991.

While on active duty in San Diego, Dr. Neuren sought medical treatment for pain in his neck and right arm and dumbness in the thumb and index finger. On May 22, 1991, a Medical Evaluation Board (MEB) convened to evaluate his condition, which had been diagnosed as: (1) "cervical spondylosis with multilevel neural foraminal narrowing"; (2) "degenerative cervical disk disease"; and (3) "right C–6 radiculotherapy secondary diagnoses #1 and #2." The MEB confirmed the medical diagnosis, concluded that the problems were degenerative and preceded

the recall to active duty, recommended continued aspirin therapy, and recommended several physical and geographic restrictions upon Dr. Neuren's continued service.

On May 29, 1991, Dr. Neuren requested a waiver of the physical standards for active duty and permission to remain on active duty. Dr. Neuren stated that the pain and numbness had subsided and no longer impaired his ability to perform his duties. The Chief of the Bureau of Medicine and Surgery requested clarification of the MEB's findings and recommendations. After receiving a clarification, the Chief of the Bureau of Medicine and Surgery concurred with the findings of the MEB and did not recommend approval of Dr. Neuren's request for a waiver.

On August 9, 1991, Dr. Neuren was informed by the Deputy Chief of Naval Personnel that, based on the findings by the MEB, he was "not physically qualified for retention in either the Ready or Standby Reserve," and was assigned a Physical Risk Classification 5. Dr. Neuren was further informed that he would be precluded from participating in either active duty for training or inactive duty drills after August 16, 1991. He was also told to elect one of the following options: (1) resign his commission; (2) request a transfer to the Retired Reserve if eligible; or (3) request a hearing before a Physical Evaluation Board (PEB).

On August 16, 1991, Dr. Neuren was released from active duty because he had completed his required active service in support of Operation Desert Storm. On December 6, 1991, a record review panel of the PEB evaluated Dr. Neuren's case and concluded that he was "Not Physically Qualified," The panel renewed their findings on January 17, 1992 after considering Dr. Neuren's rebuttal. In the interim, Dr. Neuren was ordered to "inactive duty training in a non-pay status" by the Commander of the Naval Reserve Readiness Command, Region Eleven. These orders modified earlier orders which granted Dr. Neuren drill pay status.

Dr. Neuren then requested, and received, a formal PEB hearing, which was held on March 25, 1992. The PEB found Dr. Neuren to be "Physically Qualified for retention in the Naval Reserve." The PEB, notwithstanding Dr. Neuren's earlier diagnosis, found:

> "[a]t this time he can reasonably perform the duties of a neurologist/psychiatrist. Nothing in the medical record indicates that he has been unable (due to physical impairment) to reasonably perform his duties as a physician when he was a 'reservist' or when he was activated."

The PEB concluded that Dr. Neuren was "to be continued in the Naval Reserve or Marine Corps Reserve, as appropriate, until such status is terminated under other provisions of law."

On April 13, 1992, Dr. Neuren requested to be recalled to inactive duty training in pay status in the Naval Reserve. His request was approved May 18, 1992. On April 16, 1992, Dr. Neuren requested that he be retained in the Ready Reserve in a pay status. This request was approved by the Bureau of Naval Personnel (BUPERS) on July 28, 1992. In the interim, however, on July 2, 1992, Dr. Neuren was notified by the Deputy Chief of Naval Personnel that, notwithstanding the conclusion of the PEB that he was physically qualified, he was being assigned a "Physical Risk Classification 'C'" because his medical condition restricted his mobilization assignment potential. A Physical Risk Classification of C in effect limits the service member's participation to non-pay participation, and his duty is only creditable towards retirement. Accordingly, Dr. Neuren was informed that he would be retained in the Standby Reserve–Active and his activity restricted to non-pay billets, with no further drill-pay status assignments to be authorized.

On July 10, 1993, the Officer-in-Charge of the Personnel Support Activity Detachment notified Dr. Neuren that the May 18, 1992 approval of his request to be recalled to inactive duty training status had been terminated, and that, effective June 29, 1993, he had been placed in the Individual Ready Reserves (IRR).[1] On August 9, 1993, Dr.

---

1. Under military regulations, members of the IRR, like the Standby Reserve–Active, are in the active Reserve and are subject to involuntary

Neuren again requested drill-pay status and retention in the Ready Reserves, and also submitted an application to be recalled to inactive duty training in pay status in the Naval Reserve. Both requests were subsequently approved.

On March 15, 1994, Dr. Neuren was again notified by the Chief of Naval Personnel that he had been transferred to Standby Reserve Active status on July 2, 1992. He was informed that "members of Standby Reserve–Active ... are not allowed to participate in the Naval Reserve in a pay status," and all orders for a pay billet were terminated. Accordingly, on May 20, 1994, Dr. Neuren's Orders of training in pay status were terminated and he was again transferred to the IRR.

Dr. Neuren commenced this action, alleging that the Navy, in its initial determination by the MEB that he was physically unfit for duty, as well as in the subsequent involuntary transfer to Standby Reserve Active status, acted arbitrarily, capriciously and ignored substantial evidence. In this, it appears he is challenging (although his complaint is not clear in this regard) the initial determination by the original MEB that his medical condition rendered him unfit for duty.

## DISCUSSION

Defendant has moved to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction and RCFC 12(b)(4) for failure to state a claim upon which relief can be granted. In its amended complaint, plaintiff cites three statutory grounds for jurisdiction in this matter: The Tucker Act, 28 U.S.C. § 1491 (1994); 10 U.S.C. §§ 1201–21 (1983); and 37 U.S.C. § 204 (1988). The government contends that, to the extent plaintiff seeks back pay, none of the statutes cited by plaintiff creates a substantive right entitling plaintiff to monetary relief, and the claims should be dismissed pursuant to RCFC 12(b)(1). As to any other attendant demands for equitable relief, such as a declaration that the Secretary's actions were arbitrary and capricious and retroactive reinstatement, defendant contends that these are outside the court's

recall to active duty under certain circumstances

jurisdiction absent an underlying money mandating statute. Defendant further argues that, even were the court to find jurisdiction, the conduct of the Navy in involuntarily transferring Dr. Neuren to non-pay Standby Reserve–Active status presents nonjusticiable questions.

As a preliminary matter, the Tucker Act does not itself create a substantive right to recover monetary damages. *Heim v. United States,* 22 Cl.Ct. 341, 343, *aff'd* 949 F.2d 403 (1991) (citing *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). A right to recover must be based upon the Constitution or a federal statute or regulation which grants the plaintiff, either expressly or impliedly, a right to be paid a sum certain. *Id.* (citing *Eastport S.S. Corp. v. United States* 178 Ct.Cl. 599, 605, 372 F.2d 1002 (1967)). Defendant contends that neither of the other statutes besides the Tucker Act creates a substantive right to monetary relief.

### A. 10 U.S.C. §§ 1201–21

■ Defendant contends that 10 U.S.C. §§ 1201–21 cannot be the basis for jurisdiction because this statute deals with military disability retirement benefits and severance pay based on a claim for disability. Defendant contends, however, that plaintiff's claims are premised on the notion that Dr. Neuren is not disabled, and Dr. Neuren is specifically seeking reinstatement to active duty in the Naval Reserves.

Plaintiff contends that under this statutory scheme, the Court of Federal Claims and its predecessor courts have historically granted monetary judgments. Plaintiff cites several cases, including *Ferrell v. United States,* 23 Cl.Ct. 562 (1991), and *Sawyer v. United States,* 930 F.2d 1577 (Fed.Cir.1991) for the proposition that 10 U.S.C. §§ 1201–21 creates a substantive right to recover money damages. The government does not contest that 10 U.S.C. §§ 1201–21 is a money-mandating statute which creates a substantive right to recover money damages. Rather, the government argues that the statute creates a substantive right for separated mili-

prescribed by statute.

tary personnel to recover *disability* benefits. Not only is plaintiff making no claim to such benefits, but as defendant argues, his entire theory of the case is that he is *not* disabled. Thus, in his view, he was arbitrarily and capriciously (and improperly) relegated to non-pay reserve status.

Defendant's argument is correct. There is clearly no question that 10 U.S.C. §§ 1201–21 creates a right to recover money. However, plaintiff's claim is not within the scope of recovery that can be obtained under this section. Put differently, plaintiff is making no claim for disability benefits to which he believes he is entitled under the statute but which have been improperly withheld. Rather, his entire claim is premised on being physically able to perform his duties. In challenging the actions of the Navy he is seeking back pay, not military disability retirement benefits. Both *Ferrell* and *Sawyer* involved discharged servicemen who were attempting to obtain disability retirement benefits. The cases, as well as the statute, are inapposite to this case. Section 1201 does not confer jurisdiction on the court to hear plaintiff's claim.

### B.   *37 U.S.C. § 204*

■   Plaintiff also relies upon 37 U.S.C. § 204, the military pay statute, as a source of jurisdictional authority for this court to consider plaintiff's complaint. Section 204 governs the entitlement of members of uniformed service to basic pay who are on "active duty." Since plaintiff was released from active duty on August 16, 1991, at all times afterwards he was in the reserves. Because Section 204 governs only those officers on active duty, the government contends that plaintiff is not within the scope of members of a uniformed service who can claim money under Section 204.

Plaintiff contends that Section 204 confers jurisdiction upon this court because Dr. Neuren's active duty status in the Ready Reserve was restored on May 15, 1992. It was, in his view, subsequently arbitrarily and capriciously terminated when the Chief of Personnel transferred him to the inactive reserves. Hence, according to plaintiff, he is attempt-

ing to recover back pay based on his "active" status within the military reserves.

It appears that plaintiff is confusing "active duty" in the military with "active service" in the Reserves. "Active duty" in the military is defined as:

full-time duty in the active military service of the United States. It includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned.

10 U.S.C. § 101(22) (1983). Dr. Neuren was released from active duty on August 16, 1991, once his tour of active duty in aid of Operation Desert Storm was completed. At no time after that was he on active duty. Rather, he was later restored to inactive duty status with pay in the Ready Reserve in May 1992, but this is not "active duty" within the definition of the statute. There is no dispute by plaintiff that his release from active duty in August 1991 was proper, and at all times thereafter he was not on active duty pursuant to 10 U.S.C. § 101(22). He was reinstated as a reservist and the allegations of improper action by the Navy all relate to his status as a reservist.

### C.   *37 U.S.C. § 206 (1988)*

■   Although plaintiff neither relies upon this provision nor cites it in his briefs, it is raised by the government as a possible ground for jurisdiction. 37 U.S.C. § 206 is the Military Reservists' pay statute. However, it does appear well-settled that under the plain language of the statute a reservist must actually perform duties to be entitled to compensation. *Sanford v. United States*, 32 Fed. Cl. 363, 366 (1994). Further, the only exception to the actual service rule is when a reservist has been unable to perform assigned duties due to injury, illness or disease, and only if the injury, illness or disease arose out of the performance of actual duties. *Dehne v. United States*, 970 F.2d 890, 893 (Fed.Cir.1992). Since plaintiff does not contend that his non-performance is the result of an injury or other equivalent inability to perform (in fact, he argues the opposite), any award premised on Section 206 would have to

be for constructive service. However, the Federal Circuit has stated that Section 206 does not permit payment for constructive service. *Id.* Thus this statutory scheme cannot be the basis for relief.

For the reasons stated above, neither of the statutes relied upon by plaintiff, 10 U.S.C. § 1201 *et seq.,* and 37 U.S.C. § 204, gives the court jurisdiction to hear plaintiff's claim for monetary relief. Although both statutes are money mandating, neither statute would entitle plaintiff to the payment of money even if his allegations of illegal and improper conduct were true. Section 1201 creates a statutory scheme for the payment of benefits to military personnel disabled in the line of duty. Section 204 embodies the scheme for paying "active duty" military personnel. Plaintiff is not claiming disability and he was not on active duty when the actions in question took place. He cannot now rely upon them to establish jurisdiction for this court to entertain his claim. Further, for the reasons enunciated, 37 U.S.C. § 206, although not relied upon by plaintiff, cannot be the basis for relief either.

### D. Court's jurisdiction to review the appropriateness of Dr. Neuren's transfer and his request for retroactive reinstatement

Defendant contends that, assuming the court does not have jurisdiction to hear the underlying claims premised upon a money mandating statute, plaintiff's remaining claims are then merely equitable in nature and cannot be heard absent jurisdiction to hear the underlying claims. Defendant is correct. Although the Tucker Act does grant this court the ability to grant some collateral equitable relief, "it does not in any way alter or modify the basic jurisdictional prerequisites of the Tucker Act (*i.e.* the requirement that some illegal action by the military caused the plaintiff to be removed from a status which, by statute, mandated the payment of money)." *Rice v. United States,* 31 Fed.Cl. 156, 163 (1994). Because plaintiff cannot point to a statute which mandates the payment of money, the court is without jurisdiction to entertain his collateral equitable claims.

## CONCLUSION

For the reasons stated, defendant's motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) is GRANTED. The cross-motions of the parties for judgment upon the administrative record are denied as moot.

**IT IS SO ORDERED.**