**Lieutenant Colonel Homer H. REEVES,**

v.

**The UNITED STATES,**

No. 00–8C.

United States Court of Federal Claims.

Filed: Jan. 19, 2001.*

Reissued for publication: June 22, 2001.

Homer H. Reeves, McDonough, GA, pro se.

E. Michael Chiaparas, Washington, D.C., with whom was Assistant Attorney General David W. Ogden, for the defendant. Lt. Col. Terry L. Elling and Capt. Arden B. Levy, United States Army, of counsel.

## OPINION

YOCK, Senior Judge.

This is a military pay case in which the plaintiff alleges that he was wrongfully denied consideration and, by inference, promotion to the rank of colonel in the United States Army Reserve (USAR). The plaintiff claims that the Army improperly failed to forward his promotion packet to a Unit Vacancy Board (UVB), which convened in May 1994, and that, as a result, he was effectively denied a promotion to the rank of colonel. The plaintiff further contends that he was forced to retire "prematurely" as a lieutenant colonel in 1995, or be discharged, because of consequential mandatory time-in-service and

---

* This Opinion was filed unpublished on January 19, 2001. Thereafter, the defendant filed a Request for Publication pursuant to Rule 52.1(b). This request has now been allowed, and the Opinion is reissued for publication this date, June 22, 2001.

time-in-grade requirements. The plaintiff now seeks retroactive pay and allowances, promotion to colonel, correction of records, reinstatement, and damages.

The defendant has moved to dismiss the plaintiff's Complaint for lack of jurisdiction and for failure to state a claim, or in the alternative, the defendant asks for judgment upon the administrative record. Although military pay claims are clearly within the subject matter jurisdiction of this Court, the plaintiff has failed to identify any requisite money-mandating remedy independent of the Tucker Act to support a monetary basis for relief. He concedes that the Army does not owe him money for any unpaid duty that he performed as a USAR lieutenant colonel. Rather, his Complaint is that *but for* the Army's wrongful failure to consider him for colonel and, by inference, to promote him to the rank of colonel, he was improperly denied the opportunity to serve and to be paid at the higher grade.

Reserve officers, however, are paid only for duty actually performed under 37 U.S.C. § 206(a) (1994), and because the plaintiff never actually served as, nor was duly promoted to the rank of colonel, no compensation is due or owed to the plaintiff for unperformed duties. The plaintiff is not entitled to the benefit of a position until duly appointed to it, and nonactive duty Reserve officers are not entitled to compensation for constructive service under 10 U.S.C. § 206(a). Simply put, the plaintiff has failed to establish a military pay claim that this Court can redress.

Consequently, the Court grants the defendant's motion to dismiss the plaintiff's Complaint for failure to state a claim upon which relief can be granted. In addition, the Court is precluded from granting any of the related relief the plaintiff also seeks, *e.g.*, correction of records and reinstatement, since such remedies are available only when collateral, or incident to, a judgment for money damages.

## Facts

The plaintiff, Homer H. Reeves, is a former officer in the United States Army Reserves. He began his military career in 1961, when he enlisted in the Alabama Army National Guard and was subsequently commissioned in 1967 as a Reserve second lieutenant in the Alabama Army National Guard.[1] The plaintiff transferred to the United States Army Reserve in 1990 and was assigned to an active duty organization, Headquarters Pacific Command, located at Fort Shafter, Hawaii, in an Army Reserve control group Individual Mobilization Augmentation (IMA) position.[2] As an IMA officer, the plaintiff held active status in the Reserves[3] but did not conduct monthly drills.[4] The plaintiff did report, however, for

---

1. "The Army National Guard of the United States is the Reserve component of the Army that consists of—

   "(1) federally recognized units and organizations of the Army National Guard; and
   "(2) members of the Army National Guard who are also Reserves of the Army." 10 U.S.C. § 10105 (1994).

2. There is some question regarding the exact date that the plaintiff was first assigned to an IMA position at Headquarters Pacific Command, Fort Shafter, Hawaii, however, the defendant agrees to accept 1990 as the baseline year. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for J. Upon the Admin. R. and Def.'s Resp. to Pl.'s Req. for J. Upon the Admin. R. at 3.

3. The terms "active duty" and "active status" are often confused in the context of Reserve officers. "Active duty" is a concept which describes the day-to-day functions a full-time serving member of the Armed Forces performs. A Regular active duty officer is either on active duty or retired. "Active status" is a term used only by the Reserves. A Reserve officer can be in an active status, inactive status, or retired status. "Active status" is a term used to describe a category of Reserve officers who are eligible for promotion. *See, e.g.*, 10 U.S.C. § 8360(a) (1994) (repealed effective October 1, 1996); Army Regulation (AR) 135–155, ¶ 2–2. A Reserve officer does not have to be serving on active duty to receive a Reserve promotion, but he must be in active status in the Reserves. *See, e.g.*, *Jamerson v. United States*, 185 Ct.Cl. 471, 401 F.2d 808, 811 (1968).

4. Annual training requirements differ for IMA's ("nonunit" soldiers who are assigned to active duty military organizations) and Reservists who are assigned to United States Army Reserve (USAR) units that are organized to serve as a unit, *i.e.*, Troop Program Units (TPU's). For example, Army Reserve component IMA control group members are required to have at least

two weeks of active duty training each year at Fort Shafter, Hawaii, but not in the status of a Reservist in a Troop Program Unit (TPU).

The plaintiff was considered for promotion to colonel while serving as an IMA by regularly scheduled USAR selection boards during both 1992 and 1993. Neither board, however, selected the plaintiff for promotion, and, after his second pass-over for promotion to colonel, the plaintiff discovered that a favorable Officer Evaluation Report (OER) was apparently missing from his file. The plaintiff petitioned the Army Board for Correction of Military Records (ABCMR) for relief on October 31, 1994, and the ABCMR directed that the plaintiff's corrected files be submitted to three separate USAR Special Selection Boards (SSB's) for review under the original selection criteria used to evaluate his records. Despite three separate SSB's, however, the plaintiff was still not selected for promotion to colonel and the ABCMR later approved these results.

Also, in February 1994, the plaintiff learned of a new opportunity for promotion to colonel. He discovered that there was a

shortage of candidates for promotion to colonel in the 361st Civil Affairs Brigade (CAB), a USAR TPU, located in Pensacola, Florida. This Reserve unit was under the command and control of Headquarters, United States Army Special Operations Command, Fort Bragg, North Carolina. To fill the open vacancies, the 361st CAB had decided to convene a Unit Vacancy Board (UVB) to evaluate officers from a broader geographical range.[5] The plaintiff submitted his personnel files to the 361st CAB so that they could forward them for consideration through appropriate military channels to the UVB. When the plaintiff actually arrived to conduct his interview, however, he was told that his records had not been forwarded to the UVB. The plaintiff subsequently learned that Reserve officials in the chain of command withheld his file, because they had determined that since he was a USAR IMA control group officer, and hence assigned to an active duty unit as opposed to a unit of the Army Reserve, which was specifically organized to serve as a unit, i.e., a USAR TPU, he was not eligible to meet a UVB in accordance with AR 135–155.[6]

twelve days of annual training, exclusive of travel time, in order to maintain their active status. AR 140–1, ¶2–15(b). Reservists assigned to USAR TPU's, however, have a more demanding training regimen in order to maintain their active status. Officers in pay billets (some Reserve units do not have pay billets for their officers) are usually obligated to engage in a number of unit drills each year—some units drill one evening a week, others just one or two weekends a month, depending upon the particular needs of the unit. Reserve officers in pay billets, in addition, also typically perform a period of active duty training each year, usually two weeks in duration. *See, e.g., Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999).

5. "The Secretary of the Army may convene a selection board to consider and recommend officers of *any unit of the Army Reserve that is organized to serve as a unit* for promotion to fill a vacancy in that unit in the grade of captain, major, lieutenant colonel, or colonel, within the numbers authorized for that unit * * *." 10 U.S.C. § 3383(a) (1994) (repealed effective October 1, 1996) (emphasis added). By way of background, effective October 1, 1996, "The Reserve Officer Personnel Management Act" subsequently repealed/renumbered several of the U.S.Code provisions which were in force during the period encompassing the plaintiff's claim. *See* National

Defense Authorization Act for Fiscal Year 1995, Pub.L. No. 103–337, Div. A, Title XVI, § 1601, 108 Stat. 2663, 2920 (1994).

6. AR 135–155, effective July 1, 1990, is entitled, "Promotion of Commissioned Officers and Warrant Officers other than General Officers." It states in relevant part at ¶2–9(b):

"b. *Eligibility.* The USAR unit vacancy promotion system is designed to promote officers to fill vacancies in USAR units that cannot be filled by local commanders with qualified officers of the authorized grade. Occasionally assignments cannot be made from local resources (officers assigned to units and local IRR officers). In this event, the names of all unit officers in the next lower grade who meet the following requirements will be sent to the appropriate area commander for promotion consideration:

"(1) Have completed the necessary promotion service prescribed for promotion to the next higher grade by *convening date of the board.*

"(2) Be assigned to any part of an organization whose commander is authorized to send nominations directly to the area commander, or to the commander of the senior Army headquarters outside CONUS.

"(3) Be geographically available to serve in the position for which considered. The unit commander having the vacancy will determine an officer geographically available if that officer—

After discovering that he had not been considered for promotion by the Unit Vacancy Board, the plaintiff sought further review of the Army's interpretation of AR 135–155 in relation to his eligibility for a unit vacancy promotion. He began by requesting assistance from the Office of the Inspector General of the Army (IG) in December 1994, but the IG determined in April 1995, that his complaint was unsubstantiated. The IG informed him in an opinion, dated April 6, 1995, that only geographically available officers, who were assigned to a USAR TPU, were eligible for consideration for the unit vacancy promotion. In other words, since the plaintiff was a Reserve IMA control group officer assigned to an active duty military unit (Headquarters Pacific Command in Hawaii, which is not an Army Reserve unit organized to serve as a unit, *i.e.*, a USAR TPU), he did not satisfy the mandatory eligibility criteria required to meet the UVB.

The plaintiff sought further assistance from then United States Senator Paul Coverdell after the Army IG investigation concluded that the plaintiff's complaint was unsubstantiated. Following a review of the plaintiff's package, Senator Coverdell's office basically adopted the Army IG's response, noting that although there were some changes to AR 135–155 that went into effect in late 1994, these changes did not impact the plaintiff's eligibility status.[7]

The plaintiff then filed his second application for correction of military records with the ABCMR in September 1995, but this time his application was in relation to the

United States Army Special Operations Command's allegedly wrongful refusal to consider and, by inference, promote him to the rank of colonel at the now disputed 1994 Unit Vacancy Board. The plaintiff asked for both back pay and allowances, and he requested that the Board correct his records to reflect his promotion to colonel in a TPU. After the ABCMR directed Army officials to review the plaintiff's case, the Chief of the Promotion and Notifications Branch, Office of Promotions, Reserve Components, United States Total Army Personnel Command (PERSCOM), informed the Board in an October 28, 1996 opinion that the plaintiff was not eligible for consideration. The PERSCOM opinion basically concluded that, because 10 U.S.C. § 3383 (1994) mandated that vacancies for Reserve unit positions be filled by officers who were assigned to an Army Reserve unit organized to serve as a unit,[8] the plaintiff, as an IMA assigned to an active duty military unit, was ineligible for consideration for the TPU UVB. The Personnel Division, Office of the Chief, Army Reserve, reached a similar conclusion on May 10, 1997.[9]

The ABCMR subsequently concluded that the plaintiff was not eligible for promotion to a unit vacancy position under the eligibility criteria that existed for the 1994 UVB and denied the plaintiff's second request for correction of military records on June 24, 1998.

The plaintiff retired, at some point during 1995, after initiating his second application to the ABCMR for the correction of records

---

"(*a*) Lives within a commuting distance that will allow full participation; and

"(*b*) Has the means, and is willing to travel the distance involved."

7. Senator Coverdell's Office relied in part upon interpretations from both the Adjutant General and Personnel Office at the United States Army Special Operations Command, Fort Bragg, North Carolina, in responding to the plaintiff's Congressional Inquiry. Changes were made to AR 135–155, effective September 1, 1994, that broadened the eligibility criteria for selection as a TPU officer. These changes went into effect in the interim between the February 1994 UVB and the plaintiff's October 1994 ABCMR application for correction of records. The new regulatory changes did not delete, however, the requirement that UVB candidates must be pulled from the pool of TPU officers.

8. "In referring the names of officers for consideration for promotion under subsection (a), the convening officer shall place on a zone of consideration list the name of each officer who is **assigned to a unit organized to serve as a unit,** who is eligible for consideration for promotion under section 3363(b) or (g) of this title, and who is geographically available to fill the vacancy." 10 U.S.C. § 3383(b) (1994) (emphasis added). This promotion eligibility section was in effect at all relevant times but was repealed on October 1, 1996, as noted *supra* at note 5.

9. The actual advisory opinion issued by the Office of the Chief merely indicated its concurrence with the functional experts who responded to Senator Coverdell. The Army functional staff opinions contained more detailed interpretations of AR 135–155.

based upon mandatory time-in-grade and time-in-service requirements. He filed a timely Complaint in this Court on January 7, 2000, alleging that he was wrongfully denied fair consideration and, by inference, promotion to colonel at the 1994 UVB, seeking retroactive pay and allowances, promotion to colonel, correction of records, reinstatement, and damages.

## Discussion

### I. Jurisdiction

The plaintiff asserts jurisdiction in this case under the Tucker Act, 28 U.S.C. § 1491 (1994). The Tucker Act confers jurisdiction on this Court for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department * * *." 28 U.S.C. § 1491(a)(1) (1994). The Act, however, merely confers jurisdiction on the United States Court of Federal Claims; it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Individual claimants must, therefore, look beyond the Tucker Act as a jurisdictional statute for an appropriate waiver of sovereign immunity in order to maintain a suit under the Act. *Testan*, 424 U.S. at 398, 96 S.Ct. 948; *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980).

Plaintiff's right to recover must be based upon the Constitution, a federal statute, or a regulation, which grants the plaintiff a right to be paid a sum certain. *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). Thus, the plaintiff, in a case such as this, must allege a separate statute or a regulation that creates a substantive right entitling him to money. If the statute or regulation relied upon does not entitle the plaintiff to money, then the Court does not have jurisdiction. *Eastport S.S. Corp.*, 178 Ct.Cl. at 607, 372 F.2d at 1008. *See also Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999) ("the Court of Federal Claims has jurisdiction only over those constitutional provisions, statutes, or

regulations that by their terms entitle a plaintiff to money."). Consequently, to invoke jurisdiction under the Tucker Act when a contract is not involved, a plaintiff must identify a constitutional provision, statute, or a regulation that provides a substantive right to money damages. *Tippett v. United States*, 185 F.3d 1250, 1254–55 (Fed.Cir. 1999); *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998); *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed.Cir.1995). Equitable relief may be granted if it is collateral to a money judgment. 28 U.S.C. § 1491(a)(2) (1994); *Hassler v. United States*, 34 Fed.Cl. 695, 699 (1996).

### II. Standard of Review for Failure to State A Claim

Rule 12(b)(4) of the United States Court of Federal Claims (RCFC) provides for the dismissal of a complaint based upon the failure to state a claim upon which relief can be granted. "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). *Accord Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998). This Court will dismiss a complaint for failure to state a claim upon which relief can be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. *Ponder v. United States*, 117 F.3d 549, 552–53 (1997), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998). *See also Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Mostowy v. United States*, 966 F.2d 668, 672 (Fed.Cir.1992). The Court is not to decide if the plaintiff's claim will eventually succeed, but whether or not the plaintiff has alleged a set of facts sufficient to support his claim. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683.

Moreover, in rendering a decision, the Court must presume that the undisputed factual allegations included in the complaint by

a plaintiff are true. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). Once again, the motion must be denied, however, if the plaintiff could prove some set of facts that would entitle him to relief. *See Mostowy,* 966 F.2d at 672. Dismissal by the Court under RCFC 12(b)(4) constitutes an adjudication on the merits of a claim. *Gould, Inc. v. United States,* 67 F.3d 925, 929 (Fed.Cir.1995) ("A dismissal for failure to state a claim, however, is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief.").

The plaintiff in this case is proceeding *pro se,* and thus his pleadings should be held to "less stringent standards than formal pleadings drafted by lawyers * * *." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). *See also Osborn v. United States,* 47 Fed.Cl. 224, 227 (2000); *Bienville v. United States,* 14 Cl.Ct. 440, 445 (1988). When a moving party questions the jurisdiction of the Court, the party invoking jurisdiction has the burden of proving the Court's jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 748; *Cincinnati Elecs. Corp. v. United States,* 32 Fed.Cl. 496, 500 (1994). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds,* 846 F.2d at 748.

Absent an assertion of the Court's jurisdiction under the Tucker Act, however, the plaintiff has failed to establish any appropriate money-mandating provision to support his claim for compensation. Although the defendant in its Motion to Dismiss describes this as a failure to establish jurisdiction, the United States Court of Appeals for the Federal Circuit has characterized this as an RCFC 12(b)(4) issue, *i.e.,* failure to state a claim upon which relief can be granted. *See, e.g., Gollehon Farming v. United States,* 207 F.3d 1373, 1378–79 (Fed.Cir.2000); *Palmer v. United States,* 168 F.3d at 1312–14; *Dehne v. United States,* 970 F.2d 890, 893–94 (Fed.Cir. 1992); *Banks v. Garrett,* 901 F.2d 1084, 1087–88, *cert. denied,* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). *See also Sanford v. United States,* 32 Fed.Cl. 363, 366 (1994); *Ewing v. United States,* 36 Fed.Cl. 159, 162 (1996). Notwithstanding the plaintiff's failure to establish an appropriate money-mandating provision, the Court will briefly review some potential money-mandating regulatory and statutory provisions which might support the plaintiff's claim.

## III. Requisite Money–Mandating Regulation or Statutory Entitlement

### A. Potential Money–Mandating Regulation, AR 135–155

The plaintiff cites AR 135–155 in search of a money-mandating regulation. This regulation establishes the authorization and eligibility criteria for the promotion of commissioned officers and warrant officers other than general officers. Violation of this regulation can be a valid basis to bring a suit in this Court, as the plaintiff has done, but the regulation does not mandate the payment of money damages as compensation for breach. Since this regulation, by itself, does not mandate compensation if violated, AR 135–155 must be combined with some other money-mandating provision in order for the Court to provide relief. *See, e.g. Brown v. United States,* 86 F.3d 1554, 1564 (Fed.Cir. 1996) ("[t]he substantive law mandating compensation may be either express or implied, but it must be unambiguous.").

### B. Potential Money–Mandating Statute, 37 U.S.C. § 204(a) (1994)

Plaintiffs, seeking military back pay before this Court, often invoke 37 U.S.C. § 204(a) (1994) (hereinafter "Section 204(a)") as a money-mandating statute. The entitlement to military pay is statutory in nature, not contractual. *Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985). *See also Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961) ("A soldier's entitlement to pay is dependent upon statutory right."). Section 204(a) is a widely-recog-

nized, money-mandating statute for military personnel. *See, e.g., Holley v. United States,* 124 F.3d 1462, 1465, *reh'g denied* (Fed.Cir. 1997) ("It is well established that 37 U.S.C. § 204 * * * serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge."). *See also Tippett,* 185 F.3d at 1255; *Sanders v. United States,* 219 Ct.Cl. 285, 296–97, 594 F.2d 804, 810–11 (1979) (*en banc* ). Section 204(a) entitles service members on active duty to pay commensurate with their rank and years of service. *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993). This legal entitlement to pay is not extinguished in situations of improper discharge, and it can serve as a "money-mandating" statutory basis for military pay claims under the Tucker Act. *Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995); *Strickland v. United States,* 36 Fed.Cl. 651, 654–55 (1996) (*sua sponte* identification of 37 U.S.C. § 204(a)(1) (1994) as a money-mandating provision after the plaintiff failed to cite any separate constitutional, statutory or regulatory monetary entitlement). In the instant case, however, because the plaintiff was an inactive Reservist, Section 204(a) is not applicable.

### C. Potential Money–Mandating Statute, 37 U.S.C. § 206(a) (1994)

■ Although Section 204(a) is the primary military pay authority for active duty service members, it is not a "universal" military pay statute. Military members who are not entitled to compensation under Section 204(a), *e.g.,* nonactive duty Reservists, can qualify for basic pay under 37 U.S.C. § 206(a) (1994) (hereinafter "Section 206(a)"). Section 206(a) entitles inactive duty members to pay, *inter alia,* for regular training and drills. *See Huber v. United States,* 29 Fed. Cl. 260, 262–63 (1993); *Heim v. United States,* 22 Cl.Ct. 341, 344, *aff'd,* 949 F.2d 403, 1991 WL 202659 (Fed.Cir.1991) ("Simply put, if a reservist performs his duties, he is enti-

tled to compensation at the applicable rate under this statute [37 U.S.C. § 206(a) ].").

A critical distinction between Section 204(a) and 206(a) is that Section 206(a) only entitles Reserve members to payment for duty actually performed. *Ayala v. United States,* 16 Cl.Ct. 1, 4 (1988) (citing *United States v. Wickersham,* 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906)). *See also Palmer,* 168 F.3d at 1314 (a Reserve officer cannot state a claim for back pay for unperformed duties, whether the lack of performance is voluntary or involuntary); *Pohanic v. United States,* 48 Fed.Cl. 166 (2000). The result of this strictly statutory distinction between the different entitlements to compensation under Section 204(a) and Section 206(a) is that nonactive duty Reservists cannot sue for back pay under Section 206(a) for unperformed duty.[10]

In the instant case, the plaintiff[11] seeks retroactive back pay and promotion to colonel, plus ancillary relief, for **unperformed** duty as a colonel ostensibly as a member of a unit in which he never served. The plaintiff has not alleged that the Army owes him any money for unpaid duty he performed in accordance with Section 206(a) as a Reserve lieutenant colonel. Rather, he asserts that *but for* the Army's wrongful failure to consider him for promotion to the rank of colonel (and, by inference, also promote him to colonel), he was improperly denied the opportunity to serve as a colonel and be paid for subsequent duties he could have performed at the higher grade. In other words, the plaintiff contends that the Army owes him the additional pay and allowances he could have earned but for its wrongful failure to consider and, by inference, promote him to colonel. As noted previously, however, nonactive duty service members are only entitled to payment for training actually performed under Section 206(a). The plaintiff never performed any qualifying Section 206(a) duties or drill as a colonel, however, and his claim, consequently, does not meet

---

**10.** 37 U.S.C. § 206(a)(3), however, does provide for pay for unperformed duty by an inactive duty member if a member is unable to attend scheduled instruction as a result of injuries incurred while traveling to or from his or her duty location. *See Dehne,* 970 F.2d at 893.

**11.** During all relevant periods in question, the plaintiff was a USAR lieutenant colonel assigned to an IMA control group.

the money-mandating requirements of either Section 204(a) or Section 206(a). The Army does not owe plaintiff any back pay for either performed or unperformed duty.

The United States Court of Appeals for the Federal Circuit has considered the statutory differences between active duty and Reserve compensation entitlements in previous cases. For example, in *Palmer*, 168 F.3d at 1310, the claimant was a Reservist who sought back pay after being involuntarily transferred from an Army Reserve unit in which he performed forty-eight paid drills a year plus an annual period of active duty to a Reserve reinforcement control group which did not drill.[12] Colonel Palmer's transfer involved a reduction in both duty obligations as well as accompanying pay. He brought suit to contest his transfer, asking for back pay. The Federal Circuit held that Colonel Palmer had no substantive statutory right to compensation for unperformed duty. In its holding, the Court explicitly acknowledged that the plaintiff's Reserve status left him without the normal recourse that an active duty service member would have in a basically analogous situation. The fact that Colonel Palmer did not claim pay for performed drills or training proved fatal. *Id.* at 1314.[13]

Cases such as *Palmer* are clearly distinguishable from those in which a Reservist plaintiff has been called onto active duty. Because such a claim is now predicated upon the Reservist's entitlement to active duty pay in accordance with Section 204(a), rather than Section 206(a), a Reservist claimant can contest such issues as an improper removal from active duty and claim for compensation not received. *See, e.g., Murphy*, 993 F.2d at 872 (an Air Force Reserve officer was allowed to sue under Section 204(a) when contesting his removal from active duty service after the Vietnam War).

In the instant case, however, the plaintiff is not eligible for back pay under the terms of either Section 204(a), which requires service on active duty, or Section 206(a), which compensates Reservists only for periods of duty actually performed. As noted previously, the plaintiff does not contend that he was forced to perform any unpaid duty as a lieutenant colonel. Rather, his claim is that he is entitled to back pay for the duty he could have performed as a colonel (assuming a retroactive promotion), "but for" the Army's allegedly wrongful failure to consider and, by inference, to promote him to colonel. In other words, the plaintiff is claiming, *inter alia*, compensation for constructive service[14] which is predicated upon award of a retroactive promotion by this Court. In *Dehne*, however, the Federal Circuit expressly stated that Section 206(a) does not permit payment for constructive service.[15] *See also Neuren v. United States*, 41 Fed.Cl. 422, 426–27 (1998); *Palmer*, 38 Fed.Cl. at 331 ("The only right to payment for constructive service under these statutes is when a Reservist is unable to perform because of physical disability resulting from an injury, illness or disease * * *."); *Sanford*, 32 Fed.Cl. at 366 (no statutory basis for back pay for

---

**12.** The Court notes, as an aside, that Colonel Palmer's case and the plaintiff's case both involved personnel issues arising out of the same Reserve unit, the 361st Civil Affairs Brigade, located at Pensacola, Florida. *See Palmer*, 168 F.3d at 1312.

**13.** "Col. Palmer may complain that this means that he is without recourse before the Court of Federal Claims for his allegedly wrongful transfer, when a service member on regular active duty would have had such recourse if similarly treated. Col. Palmer would be correct in his complaint. This anomaly is the result of the juxtaposition of the Supreme Court's view of the Tucker Act and its requirement that there be a separate money-mandating act * * * with the way in which Congress has written the military pay statutes for inactive duty members." *Id.* at 1314 (citation omitted).

**14.** In case law, "constructive service" has been recognized as a "legal fiction" and not as service "actually performed." *Finkelstein v. United States*, 29 Fed.Cl. 611, 621 (1993); *Dilley v. Alexander*, 627 F.2d 407, 411 (D.C.Cir.1980) ("Appellants have never been lawfully discharged [*i.e*, in the case of a wrongful discharge], so in the eyes of the law, they remain in service.").

**15.** "Thus section 206(a) mandates pay for regular periods of instruction, periods of appropriate duty, and for performance of other equivalent duties. **The statute mandates compensation for constructive performance only for instruction missed due to some physical disabilities.**" *Dehne*, 970 F.2d at 893 (emphasis added). The plaintiff's nonperformance did not arise out of injury, illness, or disease.

constructive service even if the underlying discharge was wrongful);[16] *Ayala,* 16 Cl.Ct. at 4.[17]

## IV. No Benefit From A Position Until Duly Appointed to It

In addition, the United States Supreme Court held in *Testan,* 424 U.S. at 403, 96 S.Ct. 948, that the United States Court of Claims lacked jurisdiction to entertain a lawsuit by two former federal employees who claimed that they were improperly classified. The Supreme Court concluded that there was no substantive right of recovery for an allegedly wrongful civil service classification, holding that a "federal employee is entitled to receive only the salary of the position .to which he was appointed, even though he may have performed the duties of another position or claims that he should have been placed in a higher grade." *Id.* at 406, 96 S.Ct. 948. In a parallel to the case at bar, the Supreme Court also stated pointedly that:

> The present action, of course, is not one concerning a wrongful discharge or a wrongful suspension. \* \* \* There is no claim here that either respondent has been denied the benefit of the position to which he was appointed. The claim, instead, is that each has been denied the benefit of a position to which he should have been, but

was not, appointed. *The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it.*

*Id.* at 402, 96 S.Ct. 948 (citation omitted and emphasis added).

The plaintiff in the instant case is also asking this Court to award him a position to which he was not duly appointed. Similar to the plaintiff in *Testan,* the plaintiff in this case also claims that he has been denied the benefit of a position to which he could have been, but was not appointed, and in which he never performed any pay-entitling duties under Section 206(a). The Complaint fails to state a claim upon which relief can be granted because there is no money-mandating claim for the Court to redress. *See also Rice v. United States,* 31 Fed.Cl. 156, 163, *aff'd,* 48 F.3d 1236, 1995 WL 63092 (Fed.Cir.1995) ("[o]nly upon his illegal removal *from a position to which he has been duly appointed* may a service member sue in this Court to retroactively recover pay and allowances mandated by statute.") (Emphasis added.) The plaintiff has never been duly appointed to the position for which he seeks back pay, and he also has failed to identify any separate money-mandating, substantive right to back pay independent of the Tucker Act.

**16.** The *Sanford* case is also of interest because it discusses the potential use of 10 U.S.C. § 1552 (1994) as a money-mandating statute. Although the Court in *Sanford* chose not to follow the Federal Circuit's ruling in *Dehne,* 970 F.2d at 890, and held that section 1552 was a money-mandating statute, the Court still dismissed an inactive reservist's military pay claim under RCFC 12(b)(4) because of the strict entitlement limitations of 37 U.S.C. § 206 (1994), *i.e.,* the Court was unable to provide any monetary relief for the plaintiff.

"To determine what payment would be 'due' Sanford if this Court were to correct his records, it is necessary for the court to look outside section 1552.' "

"As an inactive reservist, the source of the plaintiff's right to pay arises out of, and is defined by 37 U.S.C. § 206. *See supra.* Accordingly, because the amount of any payment under 10 U.S.C. § 1552(c) would be determined by the basic pay provisions of 37 U.S.C. § 206, and plaintiff does not qualify for pay under section 206, Sanford cannot be entitled to compensation pursuant to section 1552. Therefore, plaintiff's

claim must be dismissed for failure to state a claim upon which relief can be granted." *Sanford,* 32 Fed.Cl. at 367.

Although the money-mandating status of 10 U.S.C. § 1552 (1994) has been directly questioned due to the statute's discretionary nature, the plaintiff in the instant case, quite similar to the plaintiff in *Sanford,* is constrained by the fact that he cannot, as an inactive reservist, be paid for unperformed duty. *See also Chandler v. United States,* 47 Fed.Cl. 106, 112 (2000) ("Definitive guidance regarding whether or not section 1552 is a pay-mandating statute in spite of its discretionary language awaits further clarification by the Court of Appeals for the Federal Circuit."); *French v. United States,* 42 Fed.Cl. 49, 52–53 (1998) (*Dehne* holding challenged regarding the money-mandating status of 10 U.S.C. § 1552 (1994), *aff'd on other grounds,* 194 F.3d 1338, 1999 WL 401242 (Fed.Cir.1999)).

**17.** The Court lacks the authority to award the plaintiff a retroactive promotion based upon the facts of this case. *See infra* note 26; *Miller v. United States,* 29 Fed.Cl. 107, 116–17 (1993).

There is no underlying monetary wrong for the Court to redress.[18]

Consequently, the Court must dismiss the Complaint for failure to state a claim because the plaintiff seeks retroactive pay and promotion for a position to which he was never duly appointed and in which he never served or performed duty. *Testan,* 424 U.S. at 406, 96 S.Ct. 948; *Palmer,* 168 F.3d at 1314; *Dehne,* 970 F.2d at 892 (affirming jurisdiction) and 893–94 (but dismissing for failure to state a claim). *See also Banks,* 901 F.2d at 1087 (members of Reserve components may not maintain actions for the pay and allowances they might have received for performing inactive training duties, absent their having performed those duties); *Hassler,* 34 Fed.Cl. at 701. *See also Sanford,* 32 Fed.Cl. at 366–67 (assuming jurisdiction but dismissing claim under RCFC 12(b)(4) for inability to provide monetary relief).

The plaintiff, a nonactive duty Reserve officer, similar to the plaintiffs in both *Palmer*[19] and *Dehne,*[20] is not entitled to constructive back pay for unperformed duty. As in *Testan,*[21] the plaintiff also complains that he has been wrongfully denied the benefit of a position to which he might have been, but was never, appointed. Until properly appointed, which is not the function of the Court in this case,[22] the plaintiff is not entitled to the financial gain or benefit of any such position.

## V. Ancillary Relief

The additional Tucker Act remedies the plaintiff also seeks such as reinstatement and correction of records are only available when collateral to, or as an incident of, a judgment for money damages. *See* 28 U.S.C. § 1491(a)(2) (1994).[23] Because the plaintiff has failed to identify a substantive right to compensation independent of the Tucker Act as a basis for monetary relief,[24] the Court is

---

18. "[Plaintiff] must first establish that, under the Tucker Act, he has a money-mandating statute that entitles him to a pay remedy." *Palmer,* 168 F.3d at 1314. *See also Siegal v. United States,* 38 Fed.Cl. 386, 388 (1997).

19. 168 F.3d at 1310.

20. 970 F.2d at 860.

21. 424 U.S. at 392, 96 S.Ct. 948.

22. As discussed *infra* at note 26, courts must take into account and defer to the special expertise and needs of the military regarding the day-to-day management decisions of the armed forces. *See Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the Army. * * * Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."). *See also Adkins v. United States,* 68 F.3d 1317, 1322–23 (Fed.Cir. 1995); *Murphy,* 993 F.2d at 874. This is particularly true with regard to military duty assignments and thousands of other routine personnel decisions made regularly by the services. *Voge,* 844 F.2d at 780. Judicial intervention in matters such as these is often "beyond the competence * * * of courts to wrestle with." *Id.* Although some personnel decisions of the armed forces are certainly reviewable, even the United States Supreme Court is reluctant "to intrude * * * in military and national security affairs." *Dept. of Navy v. Egan,* 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). Consequently, although this case is dismissed under RCFC 12(b)(4), the Court notes that the Army has considerable lati-

tude in determining duty assignments, establishing uniform promotion criteria, and determining promotions, albeit subject to potential review under objective "tests and standards." *See Voge,* 844 F.2d at 782; *Sanders,* 219 Ct.Cl. at 285, 594 F.2d at 813; *Orloff,* 345 U.S. at 94, 73 S.Ct. 534.

23. *"To provide an entire remedy* and to complete the relief afforded by the judgment, the court may, *as an incident of and collateral to any such judgment,* issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records * * *." 28 U.S.C. § 1491(a)(2) (1994) (emphasis added); *Hassler,* 34 Fed.Cl. at 699 "This court may only grant equitable relief if it is collateral to a money judgment. Therefore, absent a money mandating statute this court lacks the power to void plaintiff's discharge, or to order his reinstatement." (citation omitted); *Bobula v. United States,* 970 F.2d 854, 859 (Fed.Cir. 1992) ("While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money damages."). *See also Voge v. United States,* 844 F.2d 776, 781 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988); *Walker v. United States,* 40 Fed.Cl. 666, 670 (1998); *Sanford,* 32 Fed.Cl. at 365.

24. *Holder v. Department of Army,* 229 Ct.Cl. 417, 422, 670 F.2d 1007, 1010–11 (1982) ("There is no entitlement to a monetary claim for failure to win a promotion, reclassification, or pay increase, absent violation of some statute or regulation mandating it, at least since *United States v. Testan* * * *.").

precluded from granting any of the collateral remedies the plaintiff seeks as there is no underlying monetary claim to redress.[25] Consequently, the plaintiff's claims for collateral relief also must be denied.[26] The plaintiff has failed to cite any supporting legal authority that provides a monetary entitlement for the damages he seeks.

## CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss is granted. The Clerk is directed to enter judgment for the defendant and to dismiss the Complaint with prejudice.

Each party is to bear its own costs.

---

**25.** *Palmer*, 168 F.3d at 1314 ("Before the trial court could grant Col. Palmer collateral remedies such as correction of records and reinstatement to a position from which he was wrongfully removed, he must first establish that, under the Tucker Act, he has a money-mandating statute that entitles him to a pay remedy."); *Holley*, 124 F.3d at 1465; *Adkins*, 68 F.3d at 1321. *See also Brown v. United States*, 3 Cl.Ct. 31, 47, *aff'd*, 741 F.2d 1374 (Fed.Cir.1984) ("This court's discretionary power under § 1491(a)(2) is limited *only* to circumstances, not present here, 'to complete the relief afforded by the judgment.' Because no relief has been afforded by this court's judgment in that plaintiff's money claims regarding the personnel actions against him have been dismissed, this court must also dismiss these claims for reinstatement and correction of his records as beyond its power."); *Neuren*, 41 Fed.Cl. at 427.

**26.** The Court notes that even if the plaintiff had been able to identify a separate money-mandating statute, the Court is not in a position to order the plaintiff's retroactive promotion to colonel because that is normally a nonjusticiable military personnel decision. *Murphy*, 993 F.2d at 873 (" 'A Court lacks the special expertise needed to review Reserve officers' records and rank them on the basis of relative merit.' ") (quoting *Sargisson v. United States*, 913 F.2d 918, 922 (Fed.Cir. 1990)). *See also Voge*, 844 F.2d at 782 ("[A]bsent a statute or regulation entitling a service member to a promotion as a matter of law, the Claims Court has no authority to entertain this claim."); *Law v. United States*, 26 Cl.Ct. 382, 391–92, *aff'd*, 11 F.3d 1061 (Fed.Cir.1993); *Ayala*, 16 Cl.Ct. at 3 ("Hardly any rule of law is more well established than the one to the effect that courts are not empowered to direct the promotion of mili-

tary personnel."). *See also Miller v. United States*, 29 Fed.Cl. 107, 117 (1993).

However, although the *"merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins*, 68 F.3d at 1323. *See also Bond v. United States*, 47 Fed.Cl. 641, 647–48 (2000); *Scarseth v. United States*, 46 Fed.Cl. 406, 412–13 (2000); *Murphy*, 993 F.2d at 873; *Sargisson*, 913 F.2d at 921. Judicial review is appropriate in situations where there are "tests and standards" that the Court can administer to determine whether or not the military's actions were correct. *Murphy*, 993 F.2d at 873. If there is no test or standard, the Court must abstain. *Id.*

Consequently, if serious prejudicial procedural violation(s) are established, or if a military board's decision is shown to be arbitrary, capricious, unsupported by substantial evidence, or contrary to law, the Court can remand the matter to a military department, *inter alia*, for additional consideration as required. The Court can also award back pay, correction of records, and reinstatement of prior rank as relief in meritorious cases. *See* 28 U.S.C. § 1491(a)(2) (1994); *Adkins*, 68 F.3d at 1327; *Guy v. United States*, 221 Ct.Cl. 427, 608 F.2d 867, 874–75 (1979).

In the instant case, however, given the absence of a requisite pay-mandating statute, the Court will not reach the plaintiff's procedural irregularity claims because the plaintiff has failed to state a claim upon which relief can be granted.

